1
2
3
4
5
6
7
8
9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11

12    IN RE MULLEN AUTOMOTIVE, INC.        Case No. 2:22-cv-05336-DMG-AGR
      DERIVATIVE LITIGATION
13
                                           **STIPULATION AND AGREEMENT**
14                                         **OF SETTLEMENT**

15                                         Honorable Dolly M. Gee
16
17
18
19
20
21
22
23
24
25
26
27
28

This Stipulation and Agreement of Settlement, dated as of August 21, 2024 ("Stipulation"),[1] is made and entered into by and among the following parties, and by and through their respective counsel: (i) Plaintiffs Jeff Witt, Joseph Birbigalia and Hany Morsy (collectively, "Plaintiffs"), plaintiffs in the above captioned shareholder derivative action *In re Mullen Automotive, Inc. Derivative Litigation*, Case No. 2:22-cv-05336-DMG-AGR (C.D. Cal.) (the "Consolidated Derivative Action") on behalf of themselves and derivatively on behalf of Mullen Automotive Inc. ("Mullen" or the "Company"); (ii) individual Mullen defendants David Michery, Ignacio Novoa, Mary Winter, Kent Puckett, Mark Betor, William Miltner, Jonathan New, and Jerry Alban (the "Individual Mullen Settling Defendants"); (iii) Oleg Firer[2] (together with the Individual Mullen Settling Defendants, the "Settling Defendants"); and (iv) Nominal Defendant Mullen. Plaintiffs, the Settling Defendants, and Mullen are collectively referred to as the "Settling Parties," and are each a "Settling Party."

Subject to the approval of the United States District Court for the Central District of California (the "Court"), and the terms and conditions hereof, this Stipulation is intended by the Settling Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Consolidated Derivative Action and the Released Claims (as defined below in ¶ V.1.16).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Consolidated Derivative Action

On August 1, 2022, Plaintiffs Witt and Birbigalia filed a putative shareholder derivative complaint (the "Witt Complaint") on behalf of Mullen in the Court, in the case captioned *Witt v. Michery, et. al.*, Case No. 2:22-cv-05336-DMG-AGR,

---

[1]   All capitalized terms used but not otherwise defined shall have the meanings ascribed to them in ¶ V.1 herein, and ¶ V.1 shall control over any conflicting definition of a capitalized term.

[2]   Specially appearing defendant Oleg Firer does not waive any rights to being formally served with the summons and complaint in the Consolidated Derivative Action, or in any other action or proceeding.

asserting claims against the Settling Defendants for breach of fiduciary duties, unjust enrichment, abuse of control, and waste of corporate assets, and asserting a claim against Defendant Firer for violations of Section 14 of the Securities Exchange Act of 1934 (the "Exchange Act").    The claims asserted in the Witt Complaint are predicated on similar purported facts and circumstances to those alleged in a related securities class action case previously filed in the Court on May 5, 2022, captioned *In re Mullen Automotive, Inc. Securities Litigation*, Case No. 2:22-cv-03026-DMG-AGR (C.D. Cal.) (the "Securities Class Action").

A second putative shareholder derivative complaint was filed in the Court on September 30, 2024, captioned *Morsy v. Michery, et. al.*, Case No. 2:22-cv-07139 (the "Morsy Complaint"), asserting claims similar to those asserted in the Witt Complaint against the Settling Defendants for breach of fiduciary duties, unjust enrichment, abuse of control, and waste of corporate assets, and violations of Section 14 of the Exchange Act.    Similar to the Witt Complaint, the claims in the Morsy Complaint are predicated on similar purported facts and circumstances to those alleged in the Securities Class Action.

Both the Witt Complaint and the Morsy Complaint allege that the Settling Defendants are liable to Mullen for purportedly permitting the issuance of a series of false and misleading statements, beginning on June 15, 2020, concerning Mullen's business prospects; specifically, that the Settling Defendants allegedly misrepresented Mullen's: (1) ability and timeline to produce and sell electric cars; (2) manufacturing facilities and capabilities; (3) battery technology development and capabilities; and (4) strategic partnerships and/or deals with third-parties and customer contracts.    The Witt Complaint and the Morsy Complaint allege these purported misrepresentations caused Mullen's common stock to trade at artificially inflated prices, resulting in a decline in the price when the truth was publicly disclosed.    The Settling Defendants expressly deny that either the Witt Complaint or

the Morsy Complaint has asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever.

On November 8, 2022, the Court consolidated the Witt action with the Morsy action, and appointed Gainey McKenna & Egleston and The Rosen Law Firm, P.A. as Co-Lead Counsel for the Plaintiffs. ECF No. 11. Shortly thereafter, Plaintiffs and the Individual Mullen Settling Defendants filed a Joint Stipulation to Stay Derivative Litigation. ECF No. 13. The Court's Order Staying Derivative Litigation was entered on November 30, 2022 ("Order Staying Derivative Action"). ECF No. 15.

### B.    The Securities Class Action

The Securities Class Action, narrowed following a motion to dismiss, alleges that during the putative class period from June 15, 2020 through April 18, 2022, inclusive (the "Class Period"), defendants Mullen, Mullen Technologies Inc. ("Mullen Tech"), and Michery allegedly made materially false and misleading statements and/or omitted material information which artificially inflated the price of Mullen's common stock. When the purported truth was allegedly publicly disclosed, the price of Mullen's common stock allegedly declined. Following mediation before Robert A. Meyer, Esq. of JAMS (the "Mediator") on April 2, 2024, and further discussions, the parties to the Securities Class Action agreed to settle the lawsuit for a settlement payment of $7.25 million — which was the Mediator's recommendation. On August 16, 2024, plaintiff in the Securities Class Action filed a motion for preliminary approval of the settlement.

### C.    Settlement Negotiations

In compliance with the Order Staying Derivative Action, when mediation was scheduled in the Securities Class Action, Plaintiffs were invited to, and did, attend that mediation session on April 2, 2024. On March 13, 2024, prior to the in-person mediation session with Mr. Meyer, Plaintiffs sent a written settlement demand to explore a potential resolution of the Consolidated Derivative Action. Over the next several months, with the assistance of the Mediator, the Settling Parties engaged in

extensive arm's-length negotiations regarding a possible resolution of the Consolidated Derivative Action. Ultimately, following lengthy, arm's-length negotiations, on June 3, 2024, the Settling Parties reached an agreement-in-principle to settle the Consolidated Derivative Action and executed a term sheet whereby Mullen agreed to adopt the corporate governance enhancements (the "Corporate Governance Enhancements") set forth in ¶ V.3 herein, subject to execution of a formal, final stipulation and agreement of settlement and related papers, and Court approval.

### D.    Other Pending Derivative Actions

Two other derivative cases brought on behalf of Mullen were filed after the Securities Class Action and this Consolidated Derivative Action were filed: *Coleman v. Michery, et al.*, Case No. 2023-1228-KJSM (Del. Ch.), filed on December 8, 2023 (the "*Coleman* Action"); and *Martis v. Michery, et al.*, Case No. 2:24-cv-02908-BRM-AME (D.N.J.), filed on March 14, 2024 (the "*Martis* Action"). The *Martis* Action was voluntarily dismissed by that plaintiff on June 13, 2024.

## II.    CLAIMS OF THE PLAINTIFFS AND BENEFITS OF SETTLEMENT

Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Consolidated Derivative Action have merit. However, Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Consolidated Derivative Action against the Settling Defendants through trial(s) and potential appeal(s). Plaintiffs and Plaintiffs' Counsel have also considered the uncertain outcome and the risk of any litigation, especially in complex actions such as the Consolidated Derivative Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs and Plaintiffs' Counsel are also mindful of the inherent problems of proof of, and possible defenses to, the claims asserted in the Consolidated Derivative Action. Based on their

evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Mullen and its shareholders.

## III.    THE SETTLING DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Settling Defendants have denied and continue to deny each of the claims and contentions alleged by the Plaintiffs in the Consolidated Derivative Action. The Settling Defendants expressly have denied and continue to deny all allegations of wrongdoing or liability against them, or any of them, arising out of, based upon, or related to, any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Consolidated Derivative Action. Without limiting the foregoing, the Settling Defendants have denied and continue to deny, among other things, that they breached their fiduciary duties or any other duty owed to Mullen or its shareholders, or that Plaintiffs, Mullen, or its shareholders suffered any damage or were harmed as a result of any conduct alleged in the Consolidated Derivative Action. The Settling Defendants have further asserted and continue to assert that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of Mullen and its shareholders.

Nonetheless, the Settling Defendants also have taken into account the expense, uncertainty, and risks inherent in any litigation, especially in complex cases like the Consolidated Derivative Action, and that the proposed Settlement would, among other things: (a) bring an end to the expenses, burdens, and uncertainties associated with the continued litigation of the claims asserted in the Consolidated Derivative Action; (b) finally put to rest those claims and the underlying Consolidated Derivative Action; and (c) confer benefits upon them, including further avoidance of disruption of their duties due to the pendency and defense of the Consolidated Derivative Action. Therefore, the Settling Defendants have determined that it is desirable and beneficial that the Consolidated Derivative Action, and all of the Settling Parties' disputes related thereto, be fully and finally settled in the manner

5

and upon the terms and conditions set forth in this Stipulation.  Pursuant to the terms set forth below, this Stipulation (including all of the Exhibits hereto) shall in no event be construed as or deemed to be evidence of an admission or concession by the Settling Defendants with respect to any claim of fault, liability, wrongdoing, or damage whatsoever.

## IV.   THE SETTLEMENT CONFERS BENEFITS ON MULLEN

Mullen acknowledges that the Corporate Governance Enhancements in ¶ V.3 herein confer substantial benefits on Mullen and its current shareholders.  Plaintiffs believe that the Corporate Governance Enhancements in ¶ V.3 herein are carefully targeted to address the control deficiencies alleged in the Consolidated Derivative Action.

## V.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and derivatively on behalf of Mullen), by and through their attorneys of record, and the Settling Defendants and Mullen, by and through their respective attorneys of record, that in exchange for the consideration set forth below, the Released Claims shall be fully, finally and forever compromised, settled, discharged, relinquished, and released, and the Consolidated Derivative Action shall be dismissed with prejudice as to the Settling Defendants, upon and subject to the terms and conditions of this Stipulation, as follows:

**1.   Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1   "Approval Date" means the date on which the Court enters the Judgment.

1.2   "Board" means the Board of Directors of Mullen Automotive Inc.

1.3   "Consolidated Derivative Action" means the proceedings captioned *In re Mullen Automotive, Inc. Derivative Litigation*, Case No. 2:22-cv-05336-DMG-

AGR (C.D. Cal.), pending in the United States District Court for the Central District of California.

1.4 "Court" means the U.S. District Court for the Central District of California.

1.5 "Defendants' Counsel" means any counsel that has appeared of record or rendered legal services to any of the Settling Defendants in connection with the Consolidated Derivative Action.

1.6 "District Court Approval Order" means the Order Approving Final Settlement of the Consolidated Derivative Action, substantially in the form attached as Exhibit D hereto.

1.7 "Effective Date" means the first date by which all of the events and conditions specified in ¶ V.7.1 of this Stipulation have been met and have occurred.

1.8 "Final" means, with respect to any order of the Court, including without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review. Without limitation, an order becomes Final when: (1) either no appeal has been filed and the expiration date for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *e.g.*, thirty (30) days after entry of the Judgment has passed; or (2) an appeal has been filed and either: (i) the court(s) of appeal has/have either affirmed the order or Judgment or dismissed the appeal and the time for any reconsideration or further appellate review has passed and the appellate court mandate(s) has/have issued; or (ii) a higher court has granted further appellate review and that court has either affirmed the underlying order or Judgment or affirmed the Court of Appeals' decision affirming the order or Judgment or dismissing the appeal. However, any appeal or proceeding seeking subsequent review pertaining solely to an order issued with respect to attorneys' fees, costs, or

expenses shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.9    "Judgment" means a judgment, substantially in the form and substance attached as Exhibit E hereto, rendered by the Court in the Consolidated Derivative Action upon its final approval of the settlement.

1.10    "Mullen" or the "Company" means Mullen Automotive Inc., including, but not limited to, its predecessor Net Element Inc., any other predecessors, and its successors, partners, joint ventures, subsidiaries, affiliates, divisions, and assigns.

1.11    "Mullen's Counsel" means any counsel that has appeared of record or rendered legal services to Mullen in connection with the Consolidated Derivative Action.

1.12    "Person" or "Persons" means an individual, corporation, limited liability company, professional corporation, limited liability partnership, partnership, limited partnership, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity, and each of their spouses, heirs, predecessors, successors, representatives, or assignees.

1.13    "Plaintiffs" means Jeff Witt, Joseph Birbigalia, and Hany Morsy.

1.14    "Plaintiffs' Counsel" means Gainey McKenna & Egleston and The Rosen Law Firm, P.A.

1.15    "Related Parties" means: (i) as to Mullen, each and every one of Mullen's or Net Element's past or present directors, officers, managers, employees, partners, agents, representatives, attorneys (including Mullen's Counsel), accountants, advisors, administrators, auditors, banks, insurers, co-insurers, re-insurers, fiduciaries, consultants, experts, successors, subsidiaries, predecessors, affiliates, divisions, joint ventures, assigns, assignees, general or limited partners or partnerships, limited liability companies, any entity in which Mullen has a controlling

interest, and all officers, directors, and employees of Mullen's current and former subsidiaries; and (ii) as to the Settling Defendants, for each of them (1) each spouse, immediate family member, heir, executor, estate, beneficiary, administrator, agent, attorney (including Defendants' Counsel), accountant, auditor, bank, insurer, co-insurer, re-insurer, advisor, consultant, expert, or affiliate of any of them, (2) any trust in respect of which any Settling Defendant, or any spouse or family member thereof serves as a settlor, beneficiary, or trustee, and (3) any entity in which a Settling Defendant, or any spouse or immediate family member thereof, holds a controlling interest or for which a Settling Defendant has served as an employee, director, officer, managing director, advisor, general partner, limited partner, or member and any collective investment vehicle which is advised or managed by any of them.

1.16 "Released Claims" means any and all manner of claims brought by Plaintiffs, Mullen, any Mullen shareholder derivatively on behalf of Mullen, or any other Mullen shareholder, including all debts, demands, rights, interests, actions, suits, causes of action, cross-claims, counter-claims, charges, judgments, obligations, setoffs, or liabilities for any obligations of any kind whatsoever (however denominated), for fees, costs, penalties, damages whenever incurred, and liabilities of any nature whatsoever (including, without limitation, direct or indirect claims or demands for rescission, damages, interest, attorneys' fees, and any other costs, expenses, or liabilities whatsoever, including joint and several) whether based on federal, state, local, statutory, or common law, in equity, or on any other law, rule, regulation, ordinance, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or Unknown (as set forth in ¶ V.1.22), liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, arising from any statement, disclosure, act, or omission alleged, or claims asserted, in the Consolidated Derivative Action.

1.17  "Released Persons" means the Settling Defendants, Mullen, and their respective Related Parties.

1.18  "Settlement" means the resolution of the Consolidated Derivative Action in accordance with the terms and conditions set forth in this Stipulation.

1.19  "Settling Defendants" means Defendants David Michery, Ignacio Novoa, Mary Winter, Kent Puckett, Mark Betor, William Miltner, Jonathan New, Jerry Alban, and Oleg Firer.

1.20  "Settling Parties" means, collectively, Plaintiffs, the Settling Defendants, and Mullen.

1.21  "Stipulation" means this Stipulation of Settlement dated August 21, 2024 and its Exhibits.

1.22  "Unknown Claims" means any and all Released Claims that Plaintiffs, Mullen, or any Mullen shareholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, including claims which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to this Settlement.  Unknown Claims include those Released Claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed or hidden.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs, Mullen, and all Mullen shareholders shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF**

**KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiffs, Mullen, and each Mullen shareholder acknowledge that they may hereafter discover facts in addition to or different from those which he, she, or it, or their counsel, now knows or believes to be true with respect to the subject matter of the Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different facts or additional facts. The Settling Parties expressly acknowledge, and the Mullen shareholders shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

    **2.**    **Consideration**

    2.1    Within ninety (90) days of the Judgment becoming Final, Mullen's Board shall adopt the Corporate Governance Enhancements set forth in ¶ V.3, which shall remain in effect for no less than four (4) years from the date the Judgment becomes Final.

    2.2    Mullen's Board determined that, in a good faith exercise of their business judgment, the Settlement and each of its terms are fair, reasonable, and in the best interest of Mullen and its current shareholders. Mullen acknowledges and agrees that the filing, pendency, and settlement of the Consolidated Derivative Action caused the adoption and implementation of the Corporate Governance Enhancements set forth in ¶ V.3.

    2.3    Mullen acknowledges that the Corporate Governance Enhancements set forth in ¶ V.3 confer substantial benefits upon Mullen and its current shareholders.

### 3.    The Corporate Governance Enhancements

3.1    This section V.3 provides a summary of the Corporate Governance Enhancements that Mullen has agreed to adopt.  The full text of the agreed to Corporate Governance Enhancements is attached hereto as Exhibit 1.

3.2    <u>Establishment of a Risk Committee</u>.  Mullen shall create a Board-level Risk Committee ("Risk Committee") to oversee the Company's risk management policies and framework.  The Risk Committee shall consist of at least three (3) independent directors.  The Board shall adopt and implement a formal charter for the Risk Committee, a copy of which is attached hereto as Exhibit 2.  Mullen shall post the Risk Committee Charter on its website promptly after adoption.

3.3    <u>Creation of a Disclosure Committee</u>.  Mullen shall create a separate, management-level Disclosure Committee ("Disclosure Committee") that establishes effective procedures and protocols at the Company relating to financial disclosures, to ensure that all of Mullen's significant public statements, including, but not limited to, SEC filings, material press releases, and Mullen's significant statements to non-Mullen individuals at public or private meetings, are reviewed for accuracy, integrity, and completeness, and for reviewing with management its ongoing compliance with these protocols and procedures.  The Disclosure Committee members shall consist of, at least, Mullen's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), legal counsel, and at least one other senior officer with day-to-day oversight of the key functional areas of the Company.  Mullen shall adopt and implement a formal Charter for the Disclosure Committee, a copy of which is attached hereto as Exhibit 3.  Mullen shall post the Disclosure Committee Charter on its website promptly after adoption.

3.4    <u>Audit Committee's Company Assessment</u>.  The Audit Committee will perform a one-time internal assessment of internal controls in consultation with Mullen's outside auditors.

STIPULATION AND AGREEMENT OF SETTLEMENT

3.5     Improvements to the Nominating and Corporate Governance Committee Charter.  Mullen shall amend the Nominating and Corporate Governance Committee Charter as reflected in the redlined version of the existing charter, attached hereto as Exhibit 4.  Mullen shall post the amended Nominating and Corporate Governance Committee Charter on its website promptly after adoption.

3.6     Improvements to the Compensation Committee Charter.  Mullen shall amend the Compensation Committee Charter as reflected in the redlined version of the existing charter, attached hereto as Exhibit 5.  Mullen shall post the amended Compensation Committee Charter on its website promptly after adoption.

3.7     Executive Reports.   All Mullen executives subject to the reporting requirements of Section 16 of the Exchange Act shall provide reports (either oral or written at the Board's discretion) regarding their respective areas of responsibility at all regularly scheduled quarterly Board meetings.

3.8     Improvements to Director Education.  Mullen's Corporate Governance Guidelines state that Mullen currently "provides an orientation program for new directors that includes written materials, oral presentations, and meetings with senior members of management" and is "designed to familiarize new directors with [Mullen]'s business and strategy."  Mullen shall bolster this program by requiring that all existing outside directors, and all new outside directors, attend a National Associate of Corporate Directors ("NACD") certified training program, or similar program, within one year of (a) entry of Final Judgment in this Consolidated Derivative Action, or (b) a new director joining the Board.

3.9     Board Composition and Practices.  Mullen shall amend its Corporate Governance Guidelines as reflected in the redlined version of the existing guidelines attached hereto as Exhibit 6.

3.10    Whistleblower Policy.  While Mullen's Code of Conduct indicates that the Company maintains "Whistle-Blower Policy and Procedures," Mullen's written policy is not publicly available on the Company's website and has not yet been

13

formally adopted.  Mullen shall adopt and formalize the Whistleblower Policy (the "Whistleblower Policy"), a copy of which is attached hereto as Exhibit 7.  Mullen shall post the Whistleblower Policy on the Company's website and shall remind employees of the Whistleblower Policy in an employee communication to all current employees and to each new employee as he or she joins the Company.

**4.     Settlement Procedures**

4.1     After execution of this Stipulation, Plaintiffs shall submit the Stipulation together with its Exhibits to the Court on behalf of the Settling Parties and shall move for entry of an order substantially in the form of Exhibit A hereto (the "Preliminary Approval Order"), requesting, among other things, the preliminary approval of the Settlement set forth in the Stipulation, and approval for the filing and publication of notice of the Settlement, substantially in the forms attached hereto as Exhibit B ("Long-Form Notice") and Exhibit C ("Short-Form Notice"; together with the Long-Form Notice, the "Settlement Notice"), which shall include the general terms of the Settlement set forth in the Stipulation and the date of the Settlement Hearing as described below.

4.2     Within twenty-one (21) days after entry of the Preliminary Approval Order, Mullen shall: (1) post a copy of the Long-Form Notice on the Investor Relations page of Mullen's website; (2) publish the Short-Form Notice in *Investor's Business Daily*; and (3) publish the Short-Form Notice on an electronic newswire such as *PRNewswire* or *GlobeNewswire*.  Mullen shall also update the litigation disclosure in its first quarterly filing with the SEC on Form 10-Q after the Preliminary Approval Order to state that the Long-Form Notice can be found on the Investor Relations page of Mullen's website.  At least fourteen (14) calendar days before the Settlement Hearing (defined below), Mullen shall file with the Court an appropriate affidavit with respect to the preparation and publication of the Settlement Notice. Mullen shall pay for reasonable costs, if any, of providing reasonable notice of the Settlement, in the form approved by the Court, and in no event shall Plaintiffs, any

other Mullen shareholder, the Settling Defendants, or any of their attorneys be responsible for any such costs.

4.3    Plaintiffs will also request that the Court hold a hearing in the Action (the "Settlement Hearing") to consider and determine whether the District Court Approval Order and the Judgment, substantially in the forms of Exhibits D and E hereto, should be entered: (a) approving the terms of the Settlement as fair, reasonable and adequate; (b) approving the Fee and Expense Application (defined below at ¶ V.6.1); and (c) dismissing with prejudice the Consolidated Derivative Action against the Settling Defendants.

4.4    At least twenty-one (21) days prior to the Settlement Hearing, Plaintiffs shall cause Plaintiffs' motion in support of Court approval of the Settlement and Plaintiffs' Counsel's Fee and Expense Application (defined below at ¶ V.6.1) to be made available for viewing on Plaintiffs' Counsel's websites at www.rosenlegal.com and www.gme-law.com.

4.5    Within ten (10) business days after execution of the Stipulation, Defendants shall provide notice of this proposed Settlement to the plaintiffs in the *Coleman* and *Martis* Actions.

**5.    Releases**

5.1    Upon the Effective Date, as defined in ¶ V.1.7, Plaintiffs (individually, and on behalf of their spouses, heirs, executors, administrators, personal representatives, agents, representatives, attorneys, and assigns) and Mullen, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged, and dismissed with prejudice each and every one of the Released Claims against the Released Persons.  Nothing herein shall in any way impair or restrict the rights of Plaintiffs or Mullen to enforce the terms of

1    this Stipulation, any final order and judgment issued by the Court, or any other

2    document memorializing the Settlement of the Consolidated Derivative Action.

3         5.2   Upon the Effective Date, as defined in ¶ V.1.7, Plaintiffs, acting

4    individually on their own behalf and on behalf of their spouses, heirs, executors,

5    administrators, personal representatives, agents, representatives, attorneys, and

6    assigns, and acting derivatively on behalf of Mullen and its shareholders, and Mullen,

7    for good and sufficient consideration, the receipt and adequacy of which are hereby

8    acknowledged, shall be forever barred and enjoined from commencing, instituting,

9    or prosecuting any of the Released Claims against any of the Released Persons.

10   Nothing herein shall in any way impair or restrict the rights of any Settling Party to

11   enforce the terms of the Stipulation.

12        5.3   Upon the Effective Date, as defined in ¶ V.1.7, each of the Released

13   Persons, for good and sufficient consideration, the receipt and adequacy of which are

14   hereby acknowledged, shall be deemed to have, and by operation of law and of the

15   Judgment shall have, released, relinquished, and discharged each and all of the

16   Plaintiffs and Plaintiffs' Counsel and all current Mullen shareholders (solely in their

17   capacity as Mullen shareholders) from any and all manner of claims, known or

18   unknown, whether based on federal, state, local, statutory, or common law, in equity,

19   or on any other law, rule, regulation, ordinance, contract, or the law of any foreign

20   jurisdiction, whether fixed or contingent, known or unknown, liquidated or

21   unliquidated, suspected or unsuspected, asserted or unasserted, matured or

22   unmatured, arising out of the commencement, litigation, or settlement of the

23   Consolidated Derivative Action.   Nothing herein shall in any way impair or restrict

24   the rights of the Released Persons to enforce the terms of this Stipulation, any final

25   order and judgment issued by the Court, or any other document memorializing the

26   Settlement of the Consolidated Derivative Action.

27

28

**6.    Plaintiffs' Counsel's Attorneys' Fees and Expenses**

6.1    Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees and expenses in an amount commensurate with the value of the Settlement's benefits and the risks assumed by Plaintiffs' Counsel in pursuing the Action on a wholly contingent basis (the "Fee and Expense Amount"), and reasonable service awards (the "Service Awards"), not to exceed the aggregate amount of $500,000.00 (collectively, the "Fee and Expense Application").

6.2    Mullen will not object to the Fee and Expense Application, and shall cause the aggregate amount of $500,000.00 to be paid to an escrow account designated by Plaintiffs' Counsel (the "Escrow Account") within thirty (30) days of (a) entry of the Preliminary Approval Order, and (b) upon receipt of a completed W-9 and payment instructions, whichever is later.

6.3    Subject to the terms and conditions of this Stipulation, the Court-awarded amount of the Fee and Expense Amount and Service Awards shall be immediately releasable from the Escrow Account upon entry of a Final order and judgment approving the Settlement and the Fee and Expense Amount and Service Awards, notwithstanding the existence of any collateral attacks on the Settlement, including, without limitation, any objections or appeals; provided, however, that Plaintiffs' Counsel shall cause a full or partial refund or repayment of the Fee and Expense Amount and Service Awards to be paid to the person(s) who made the payment(s) as set forth in ¶ V.6.2 above, as appropriate, if a collateral attack is successful, the Settlement is otherwise terminated, or the Court reduces the Fee and Expense Amount or the Service Awards.  Plaintiffs' Counsel shall allocate the Fee and Expense Amount as agreed amongst themselves, and Mullen and the Settling Defendants shall have no responsibility nor liability for such allocation.

6.4    Any order or proceeding relating to the application for or disbursement of attorneys' fees, or any appeal from any order relating thereto or reversal or

modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the approval of the Settlement and this Stipulation.

**7.    Conditions of Settlement; Effect of Disapproval, Cancellation, or Termination**

7.1    The Effective Date shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the District Court Approval Order, substantially in the form of Exhibit D attached hereto;

(b)    the Court has entered the Judgment, substantially in the form of Exhibit E attached hereto; and

(c)    the Judgment has become Final.

7.2    If any of the conditions specified in ¶ V.7.1 are not met, then the Stipulation shall be canceled and terminated subject to the provisions of ¶ V.7.4, unless counsel for the Settling Parties mutually agree in writing to proceed with an alternative or modified Stipulation and submit it for Court approval.

7.3    The Settling Parties shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other parties to this Stipulation within thirty (30) days of: (a) the Court's final refusal to enter the District Court Approval Order in any material respect; (b) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; or (c) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Ninth Circuit or the United States Supreme Court.  The provisions of ¶ V.7.4 below shall apply to any termination under this paragraph.  However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees, payment of litigation expenses, or service award, shall not affect the finality of any Judgment and shall not be grounds for termination of the Settlement.

7.4   If for any reason this Stipulation is terminated, or cancelled, or otherwise fails to become effective for any reason:

(a)   The Settling Parties, Released Persons and Related Parties shall be restored to their respective positions that existed on June 2, 2024;

(b)   All negotiations, proceedings, documents prepared, and statements made in connection with this Stipulation shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by a Settling Party of any act, matter, or proposition and shall not be used in any manner for any purpose (other than to enforce the terms remaining in effect) in any subsequent proceeding in the Consolidated Derivative Action or in any other action or proceeding; and

(c)   The terms and provisions of the Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in the Consolidated Derivative Action or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

7.5   No order of the Court or modification or reversal on appeal of any order of the Court concerning the amount of attorneys' fees, costs, and expenses, or service award(s) awarded by the Court to Plaintiffs and Plaintiffs' Counsel, shall constitute grounds for cancellation or termination of the Stipulation, affect the enforceability of the Stipulation, or delay or preclude the Judgment from becoming Final.

7.6   If the Settlement embodied in this Stipulation is approved by the Court, and the Settlement has not been terminated for any reason, the Settling Parties shall request that the Court enter the Judgment, substantially in the form attached hereto as Exhibit E.

**8.    Miscellaneous Provisions**

8.1   The Settling Parties: (a) acknowledge that it is their intent to consummate the terms and conditions of this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and

19

conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between Plaintiffs, Mullen, and Mullen's shareholders, on the one hand, and the Released Persons, on the other hand, arising out of, based upon, or related to, the Released Claims.  The Settlement compromises disputed claims that are contested and shall not be deemed an admission by any Settling Party or Released Person as to the merits, or lack thereof, of any claim, allegation, or defense.  The District Court Approval Order shall contain a finding that during the course of the litigation, the parties to the Consolidated Derivative Action and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar laws relating to the institution, prosecution, defense, or settlement of the Consolidated Derivative Action.  No Settling Party or Related Party shall assert any claims for violation of Rule 11 of the Federal Rules of Civil Procedure or any similar laws relating to the institution, prosecution, defense, or settlement of the Consolidated Derivative Action.  The Settling Parties agree that the Released Claims are being settled voluntarily after consultation with an experienced Mediator and legal counsel who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

8.3    The Settling Parties agree that any disputes between or amongst the parties related to the Settlement or any of its terms shall be presented to and be mediated by the Mediator on the terms and subject to the processes and procedures set forth by the Mediator.

8.4    Pending the Effective Date, the Settling Parties agree not to initiate any proceedings concerning the Released Claims other than those incident to the Settlement itself; provided, however, that Mullen and the Settling Defendants may seek to prevent, stay, or dismiss any other action or claims brought seeking to assert

any Released Claims, including but not limited to the *Coleman* Action and the *Martis* Action, if refiled.

8.5     Neither the Stipulation nor the Settlement, including any Exhibits attached hereto, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (a) is or may be deemed to be or may be offered, attempted to be offered, or used in any way as a concession, admission, or evidence of the validity of any Released Claims, or of any fault, wrongdoing, or liability of the Released Persons or Mullen; or (b) is or may be deemed to be or may be used as a presumption, admission, or evidence of, any liability, fault, or omission of any of the Released Persons or Mullen in any civil, criminal, administrative, or other proceeding in any court, administrative agency, tribunal, or other forum.  Neither this Stipulation nor the Settlement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Released Persons may file or use the Stipulation, the District Court Approval Order, and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, standing, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.6     All designations and agreements made and orders entered during the course of the Consolidated Derivative Action relating to the confidentiality of documents or information shall survive this Settlement.

8.7     All Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

8.8    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.9    This Stipulation shall be construed as if the Settling Parties collectively prepared it, and any uncertainty or ambiguity shall not be interpreted against any of the Settling Parties.

8.10    This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning the Stipulation and/or any of its Exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.  The Stipulation supersedes and replaces any prior or contemporaneous writing, statement, or understanding pertaining to the Consolidated Derivative Action and no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Settling Parties or their counsel, or the circumstances under which the Stipulation was made or executed.  It is understood by the Settling Parties that, except for matters expressly represented herein, the facts or law with respect to which this Stipulation is entered into may turn out to be other than or different from the facts now known to each Settling Party or believed by such Settling Party to be true; each Settling Party therefore expressly assumes the risk of facts or law turning out to be different, and agrees that this Stipulation shall be in all respects effective and not subject to termination by reason of any such different facts or law.

8.11    Except as otherwise provided herein, all parties, including all Settling Defendants, their counsel, Mullen and its counsel, and Plaintiffs and Plaintiffs' Counsel, shall bear their own fees, costs, and expenses.

8.12    Counsel for the Settling Parties are expressly authorized by their respective clients to take all appropriate actions required or permitted to be taken pursuant to the Stipulation to effectuate its terms and conditions.

STIPULATION AND AGREEMENT OF SETTLEMENT

8.13    Plaintiffs represent and warrant they have not assigned or transferred, or attempted to assign or transfer, to any Person any Released Claim or any portion thereof or interest therein.  Plaintiffs further represent and warrant that each of them have owned shares of Mullen stock from at least the date of the filing of the initial complaint in this Consolidated Derivative Action and will continue to do so until the Effective Date of the Settlement.

8.14    Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any Settling Party hereto hereby warrants that such Person has the full authority to do so.

8.15    Any failure by any Settling Party to this Stipulation to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon strict performance of all provisions of the Stipulation to be performed by such other Settling Party.

8.16    The Stipulation and Exhibits may be executed in one or more counterparts.  A faxed or PDF signature shall be deemed an original signature for purposes of this Stipulation.  All executed counterparts including facsimile and/or PDF counterparts shall be deemed to be one and the same instrument.  A complete set of counterparts, either originally executed or copies thereof, shall be filed with the Court.

8.17    This Stipulation shall be binding upon, and inure to the benefit of, the Settling Parties and the Released Persons and their respective successors, assigns, heirs, spouses, marital communities, executors, administrators, personal representatives, agents, representatives, trustees in bankruptcy, and legal representatives.  The Settling Parties shall use their best efforts, and cooperate with each other in good faith, to consummate the Settlement contemplated herein.

8.18    Without affecting the finality of the Judgment, entered in accordance with this Stipulation, the Court shall retain jurisdiction with respect to the award of attorneys' fees and expenses, the Service Awards to Plaintiffs, and the implementation and enforcement of the terms of the Stipulation, the District Court Approval Order, and the Judgment, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation, the District Court Approval Order, and the Judgment, and for matters arising out of, concerning, or relating thereto, as well as the award of attorneys' fees and expenses and the Service Awards to Plaintiffs.

8.19    This Stipulation and the Exhibits hereto, and the rights and obligations of the Settling Parties to the Stipulation, shall be construed and enforced in accordance with, and governed by, the internal substantive laws of the State of Delaware without giving effect to Delaware's choice-of-law principles.

8.20    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

8.21    Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the joint defense privilege, or work product protection.

8.22    Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions in this Stipulation.

8.23    At any time upon written mutual agreement, the Settling Parties may make non-material changes to this Stipulation or its Exhibits without further order of the Court to confirm the intent of the Settling Parties.

8.24    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt to the intended recipient as set forth below:

| | | |
|---|---|---|
| 1 | If to Plaintiffs or Plaintiffs' Counsel: | Erica L. Stone, Esq. |
| 2 | | **THE ROSEN LAW FIRM, P.A**. |
| | | 275 Madison Avenue, 40th Floor |
| 3 | | New York, NY 10016 |
| | | Telephone: (212) 686-1060 |
| 4 | | Email: estone@rosenlegal.com |
| 5 | | and |

Gregory M. Egleston, Esq.
**GAINEY McKENNA & EGLESTON**
Gregory M. Egleston
260 Madison Avenue, 22nd Floor
New York, New York 10016
Telephone: (212) 983-1300
Email:  gegleston@gme-law.com

If to Mullen or the Individual Mullen
Settling Defendants:

Brian P. Miller, Esq.
**KING & SPALDING LLP**
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 4700
Miami, FL 33131
Telephone: (305) 462-6000
Email: bmiller@kslaw.com

If to Defendant Firer:

F. Phillip Hosp, Esq.
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA  90071
Telephone: (213) 972-4500
Email: phosp@foley.com

**9.    Stay Pending Court Approval**

9.1    Pending Court approval of the Stipulation, the Settling Parties agree to stay any and all proceedings in the Consolidated Derivative Action other than those incident to the Settlement.

9.2.    Except as necessary to pursue the Settlement and determine a fee award pursuant to the Fee and Expense Application and Service Award application, pending final determination of whether the Stipulation should be approved, all Settling Parties agree not to institute, commence, prosecute, continue, or in any way participate in,

whether directly or indirectly, representatively, individually, derivatively on behalf of Mullen, or in any other capacity, any action or other proceeding asserting any Released Claims.

      9.3.   Notwithstanding ¶¶ V.9.1 and V.9.2, nothing herein shall in any way impair or restrict the rights of any of the Settling Parties to defend this Stipulation or to otherwise respond in the event any Person objects to the Stipulation, the proposed Judgment to be entered, the Fee and Expense Application, Service Award Application, and/or any proposed fee order.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

STIPULATION AND AGREEMENT OF SETTLEMENT

1    IN WITNESS THEREOF, the Settling Parties have caused the Stipulation to

2   be executed, by themselves and/or by their duly authorized attorneys, dated August

3   21, 2024.

4   **THE ROSEN LAW FIRM, P.A**.              **KING & SPALDING LLP**

5   By: _____          By: _____
6   Erica L. Stone                        Brian P. Miller, Esq.
    Phillip Kim                           Samantha J. Kavanaugh, Esq.
7   275 Madison Avenue, 40th Floor        Southeast Financial Center
8   New York, NY 10016                    200 S. Biscayne Boulevard, Suite 4700
    Tel: (212) 686-1060                   Miami, FL 33131
9   Email: estone@rosenlegal.com          Tel: (305) 462-6000
    Email: philkim@rosenlegal.com         Email: bmiller@kslaw.com
10                                         Email: skavanaugh@kslaw.com
    *Co-Lead Counsel for Plaintiffs*
11                                         *Counsel for Nominal Defendant Mullen*
12                                         *Automotive Inc. and Defendants David*
                                          *Michery, Ignacio Novoa, Mary Winter,*
13                                         *Kent Puckett, Mark Betor, William*
                                          *Miltner, Jonathan New, and Jerry Alban*
14

15

16  **GAINEY McKENNA & EGLESTON**          **FOLEY & LARDNER LLP**

17  By: _____          By: _____
    Gregory M. Egleston                   F. Phillip Hosp
18  Thomas J. McKenna                     Troy S. Tessem
19  260 Madison Avenue, 22nd Floor        555 South Flower Street, Suite 3300
    New York, New York 10016              Los Angeles, CA 90071
20  Telephone: (212) 983-1300             Telephone: (213) 972-4500
    Email: gegleston@gme-law.com          Email: phosp@foley.com
21  Email: tjmcKenna@gme-law.com          Email: ttessem@foley.com

22  *Co-Lead Counsel for Plaintiffs*       *Counsel for Specially Appearing*
23                                         *Defendant Oleg Firer*

24

25

26

27

28

27
STIPULATION AND AGREEMENT OF SETTLEMENT

1    IN WITNESS THEREOF, the Settling Parties have caused the Stipulation to

2    be executed, by themselves and/or by their duly authorized attorneys, dated August

3    21, 2024.

4

**THE ROSEN LAW FIRM, P.A.**               **KING & SPALDING LLP**

5

6    By: _____           By: _____
     Erica L. Stone                          Brian P. Miller, Esq.

7    Phillip Kim                             Samantha J. Kavanaugh, Esq.
     275 Madison Avenue, 40th Floor          Southeast Financial Center

8    New York,  NY 10016                     200 S. Biscayne Boulevard, Suite 4700
     Tel: (212) 686-1060                     Miami, FL  33131

9    Email: estone@rosenlegal.com            Tel: (305) 462-6000
     Email: philkim@rosenlegal.com           Email: bmiller@kslaw.com

10                                            Email: skavanaugh@kslaw.com
     *Co-Lead Counsel for Plaintiffs*

11                                            *Counsel for Nominal Defendant Mullen*
                                             *Automotive Inc. and Defendants David*

12                                            *Michery, Ignacio Novoa, Mary Winter,*
                                             *Kent Puckett, Mark Betor, William*

13                                            *Miltner, Jonathan New, and Jerry Alban*

14

15

16   **GAINEY McKENNA & EGLESTON**           **FOLEY & LARDNER LLP**

17   By: _____           By: _____
     Gregory M. Egleston                     F. Phillip Hosp

18   Thomas J. McKenna                       Troy S. Tessem
     260 Madison Avenue, 22nd Floor          555 South Flower Street, Suite 3300

19   New York, New York  10016               Los Angeles, CA  90071
     Telephone: (212) 983-1300               Telephone: (213) 972-4500

20   Email: gegleston@gme-law.com            Email: phosp@foley.com
     Email: tjmcKenna@gme-law.com            Email: ttessem@foley.com

21

22   *Co-Lead Counsel for Plaintiffs*        *Counsel for Specially Appearing*
                                             *Defendant Oleg Firer*

23

24

25

26

27

28

STIPULATION AND AGREEMENT OF SETTLEMENT

1    IN WITNESS THEREOF, the Settling Parties have caused the Stipulation to

2  be executed, by themselves and/or by their duly authorized attorneys, dated August

3  21, 2024.

4
**THE ROSEN LAW FIRM, P.A.**          **KING & SPALDING LLP**

5
By: _____           By: _____
6  Erica L. Stone                        Brian P. Miller, Esq.
   Phillip Kim                           Samantha J. Kavanaugh, Esq.
7  275 Madison Avenue, 40th Floor        Southeast Financial Center
8  New York, NY 10016                    200 S. Biscayne Boulevard, Suite 4700
   Tel: (212) 686-1060                   Miami, FL 33131
9  Email: estone@rosenlegal.com          Tel: (305) 462-6000
   Email: philkim@rosenlegal.com         Email: bmiller@kslaw.com
10                                        Email: skavanaugh@kslaw.com
   *Co-Lead Counsel for Plaintiffs*
11                                        *Counsel for Nominal Defendant Mullen*
                                          *Automotive Inc. and Defendants David*
12                                        *Michery, Ignacio Novoa, Mary Winter,*
                                          *Kent Puckett, Mark Betor, William*
13                                        *Miltner, Jonathan New, and Jerry Alban*
14

15

16  **GAINEY McKENNA & EGLESTON**        **FOLEY & LARDNER LLP**

17  By: *Thomas J. McKenna*               By: _____
    Gregory M. Egleston                   F. Phillip Hosp
18  Thomas J. McKenna                     Troy S. Tessem
19  260 Madison Avenue, 22nd Floor        555 South Flower Street, Suite 3300
    New York, New York 10016              Los Angeles, CA 90071
20  Telephone: (212) 983-1300             Telephone: (213) 972-4500
    Email: gegleston@gme-law.com          Email: phosp@foley.com
21  Email: tjmcKenna@gme-law.com          Email: ttessem@foley.com

22  *Co-Lead Counsel for Plaintiffs*      *Counsel for Specially Appearing*
                                          *Defendant Oleg Firer*
23

24

25

26

27

28

                                    27
─────────────────────────────────────────────

1    IN WITNESS THEREOF, the Settling Parties have caused the Stipulation to

2  be executed, by themselves and/or by their duly authorized attorneys, dated August

3  21, 2024.

4

5  **THE ROSEN LAW FIRM, P.A**.        **KING & SPALDING LLP**

6  By: _____        By: _____
   Erica L. Stone                       Brian P. Miller, Esq.

7  Phillip Kim                          Samantha J. Kavanaugh, Esq.
   275 Madison Avenue, 40th Floor       Southeast Financial Center

8  New York,  NY 10016                  200 S. Biscayne Boulevard, Suite 4700
   Tel: (212) 686-1060                  Miami, FL  33131

9  Email: estone@rosenlegal.com         Tel: (305) 462-6000
   Email: philkim@rosenlegal.com        Email: bmiller@kslaw.com

10                                      Email: skavanaugh@kslaw.com
   *Co-Lead Counsel for Plaintiffs*

11                                      *Counsel for Nominal Defendant Mullen*
                                        *Automotive Inc. and Defendants David*

12                                      *Michery, Ignacio Novoa, Mary Winter,*
                                        *Kent Puckett, Mark Betor, William*

13                                      *Miltner, Jonathan New, and Jerry Alban*

14

15

16 **GAINEY McKENNA & EGLESTON**        **FOLEY & LARDNER LLP**

17 By: _____        By: _____
   Gregory M. Egleston                  F. Phillip Hosp

18 Thomas J. McKenna                    Troy S. Tessem
   260 Madison Avenue, 22nd Floor       555 South Flower Street, Suite 3300

19 New York, New York  10016            Los Angeles, CA  90071
   Telephone: (212) 983-1300            Telephone: (213) 972-4500

20 Email: gegleston@gme-law.com         Email: phosp@foley.com
   Email: tjmcKenna@gme-law.com         Email: ttessem@foley.com

21

22 *Co-Lead Counsel for Plaintiffs*     *Counsel for Specially Appearing*
                                        *Defendant Oleg Firer*

23

24

25

26

27

28

27
STIPULATION AND AGREEMENT OF SETTLEMENT

# EXHIBIT 1

*In re Mullen Automotive, Inc. Derivative Litigation*
Lead Case No. 2:22-cv-05336-DMG-AGR (C.D. Cal.)

**CORPORATE GOVERNANCE TERM SHEET**

Within ninety (90) days of issuance of a final order approving the settlement of *In re Mullen Automotive, Inc. Derivative Litigation*, Case No. 2:22-cv-05336-DMG-AGR, pending in the United States District Court for the Central District of California (the "Consolidated Derivative Action"), the Board of Directors ("Board") of Mullen Automotive Inc. ("Mullen" or the "Company") shall adopt the following corporate governance changes (the "Corporate Governance Enhancements"), to remain in effect four (4) years from entry of final judgment in this Consolidated Derivative Action.

Mullen acknowledges that the filing, pendency, and settlement of the Consolidated Derivative Action caused the Company's adoption of the Corporate Governance Enhancements. Mullen also acknowledges and agrees that the Corporate Governance Enhancements confer benefits on Mullen and Mullen's current shareholders.

**1.    ESTABLISHMENT OF A RISK COMMITTEE**

The Company shall create a Board-level Risk Committee to oversee the Company's risk management policies and framework. The Board shall create a Risk Committee Charter, and the Charter shall be available on the Company's website. The Risk Committee shall consist of at least three (3) independent directors. The Risk Committee's responsibilities shall be as follows:

(a)    The Risk Committee shall be primarily responsible for the risk management policies of the Company's operations and oversight of the operation of the Company's risk management framework. Nothing herein shall abrogate the risk assessment and oversight responsibilities of the Board and its existing committees;

(b)    The Risk Committee shall be responsible for monitoring Mullen's compliance with all public reporting requirements as well as all internal risk assessment and internal reporting conducted by Mullen employees. The Risk Committee shall be responsible for identifying material risks relating to Mullen's compliance with all applicable laws and regulations and public disclosures about Mullen's business affairs, financial reporting, and risk exposure;

(c)    The Risk Committee shall have free and open access to management and Company employees for the purpose of identifying material risks relating to Mullen's compliance procedures;

(d)    The Risk Committee, with the assistance of the Audit Committee, shall be responsible for monitoring compliance with Mullen's Code of Business Conduct and Ethics (the "Code of Conduct"). In the event that a violation of the Code of Conduct is sufficiently material to trigger a disclosure obligation, the Risk Committee will report the violation to the full Board;

(e)     The Risk Committee shall have the authority to retain separate and independent advisors or counsel to aid in fulfilling its responsibilities under its charter, which shall be at Mullen's expense; and

(f)     The Risk Committee shall retain a third-party reporting service who will establish a telephone number, website, and email address specific to the Company. The third-party provider shall promptly report in writing any credible complaint to the Risk Committee and Audit Committee within three (3) business days of receipt. The contact information for the third-party reporting service, including its telephone number, email address, and website URL, shall be posted by Mullen on its website and elsewhere so as to be available not only to employees, but also to customers, vendors, and other third parties. The third-party telephone number, email address, and website shall provide an anonymous communication channel for employees and other stakeholders to report their concerns regarding, among other things, the integrity of Mullen's public disclosures, internal controls, auditing, financial reporting, accounting matters, insider sales and other matters. Employees may also use this communication channel to report concerns relating to ethical business or personal conduct, integrity, and professionalism. The Risk Committee shall ensure that all anonymous whistleblower complaints are provided to the Company's legal counsel and that all complaints are completely and fully investigated to the extent recommended by the Company's legal counsel, and that any appropriate remedial action is taken. The Risk Committee shall ensure that the Company's nonretaliation policy is strictly complied with in order to protect any Mullen employee who reports a complaint via the third-party reporting service.

## 2.     CREATION OF A DISCLOSURE COMMITTEE

To ensure that the Company's disclosures are accurate and complete, the Company shall create a separate, management-level Disclosure Committee that establishes effective procedures and protocols at the Company relating to financial disclosures, to ensure that all of the Company's significant public statements, including, but not limited to, SEC filings, material press releases, and the Company's significant statements to non-Company individuals at public or private meetings, are reviewed for accuracy, integrity, and completeness, and for reviewing with management its ongoing compliance with these protocols and procedures.

The Disclosure Committee members shall consist of, at least, the Company's CEO, CFO, legal counsel, and at least one other senior officer with day-to-day oversight of the key functional areas of the Company. The Company shall create a Disclosure Committee Charter, which shall be posted on the Company's website. The Disclosure Committee shall, among other responsibilities:

(a)     Establish procedures and review timelines relating to the preparation and filing of the Company's quarterly earnings press releases and periodic SEC reports, including disclosure policies and lines of communication to ensure that relevant Company personnel timely report to the Disclosure Committee information potentially requiring disclosure, in coordination with other groups within the Company as appropriate;

(b)     Review the Company's Securities Exchange Act of 1934 (the "Exchange Act") filings (including Forms 10-K, Forms 10-Q, Forms 8-K, and proxy statements), and Securities Act of 1933 (the "1933 Act") registration statements; and

(c)    In conducting such review, coordinate with other Company senior officers, independent accountants, internal auditors, outside legal counsel, and the Audit Committee, as necessary.

## 3.    THE AUDIT COMMITTEE'S COMPANY ASSESSMENT

The Audit Committee will perform a one-time internal assessment of internal controls in consultation with Mullen's outside auditors.

## 4.    IMPROVEMENTS TO THE NOMINATING AND CORPORATE GOVERNANCE COMMITTEE

Mullen shall adopt a resolution to amend the Nominating and Corporate Governance Committee Charter. The amended Nominating and Corporate Governance Committee Charter shall be posted on the Company's website. To the extent that it does not already do so, the Nominating and Corporate Governance Committee Charter shall require the following:

(a)    The Nominating and Corporate Governance Committee shall meet with each prospective new Board member prior to his or her nomination to the Board and then recommend whether such individual shall be nominated for membership to the Board. Such review shall require, *inter alia*, a background check of each candidate; and

(b)    In accordance with its duties to develop and recommend Corporate Governance Guidelines to the Board, the Nominating and Corporate Governance Committee shall ensure that the Corporate Governance Guidelines, and any amendments thereto, are promptly made available to the public, through the Company's website or otherwise.

## 5.    IMPROVEMENTS TO THE COMPENSATION COMMITTEE CHARTER

Mullen shall adopt a resolution to amend the Amended and Restated Compensation Committee Charter ("Compensation Committee Charter"). The Compensation Committee Charter, as amended, shall be posted on the Company's website. To the extent it does not already do so, the Compensation Committee Charter shall require the following:

(a)    In determining, setting, or approving annual short-term compensation arrangements, the Compensation Committee shall take into account the particular executive's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures. This shall not affect payments or benefits that are required to be paid pursuant to the Company's plans, policies, or agreements; and

(b)    In determining, setting, or approving termination benefits and/or separation pay to executive officers, the Compensation Committee shall take into consideration the circumstances surrounding the particular executive officer's departure and the executive's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures. This shall not affect payments or benefits that are required to be paid pursuant to the Company's plans, policies, or agreements.

6.    **EXECUTIVE REPORTS**

All Section 16 officers shall provide reports (either oral or written at the Board's discretion) regarding their respective areas of responsibility at all regularly scheduled quarterly Board meetings.

7.    **IMPROVEMENTS TO DIRECTOR EDUCATION**

The Company's Corporate Governance Guidelines state that Mullen currently "provides an orientation program for new directors that includes written materials, oral presentations, and meetings with senior members of management" and is "designed to familiarize new directors with [Mullen]'s business and strategy." Mullen shall bolster this program by requiring that all existing outside directors, and all new outside directors, attend a National Associate of Corporate Directors ("NACD") certified training program, or similar program, within one year of (a) entry of final judgment in this Consolidated Derivative Action or (b) a new director joining the Board.

8.    **BOARD COMPOSITION AND PRACTICES**

The Company shall amend its Corporate Governance Guidelines to require that independent directors may sit on no more than two (2) additional public company boards of directors.

9.    **WHISTLEBLOWER POLICY**

While the Company's Code of Conduct indicates that the Company maintains "Whistle-Blower Policy and Procedures," the Company's written policy is not publicly available on the Company's website and has not yet been formally adopted. The Company shall formalize the Whistleblower Policy (the "Whistleblower Policy"). The Company shall post the Whistleblower Policy on the Company's website and shall remind employees of the Whistleblower Policy in an employee communication to all current employees and to each new employee as he or she joins the Company.  The Company's Whistleblower Policy shall:

(a)    Encourage interested parties to bring forward alleged ethical and legal violations and/or a reasonable belief that ethical and legal violations have occurred to the parties identified in the Code of Conduct, the Audit Committee, Risk Committee, and/or the third-party reporting service provider (from section 1(f) above) so that action may be taken to resolve the problem as appropriate. These complaints shall be reviewed by the Risk Committee and Audit Committee, in consultation with and under the supervision of the Company's legal counsel, and presented to the full Board as determined by the Risk Committee and the Audit Committee.

(b)    Effectively communicate that Mullen is serious about adherence to its corporate governance policies and that whistleblowing is an important tool in achieving this goal.

(c)    Adequately notify employees, independent contractors and vendors of Mullen of the following:

(i)     Whistleblower complaints directed to the Audit Committee, Risk Committee, and/or the third-party reporting service provider will be handled by these parties anonymously and in confidence;

(ii)     In the performance review process, employees may be rewarded for top performance and satisfying the stated values, business standards, and ethical standards of the Company;

(iii)     It is both illegal and against Mullen's policy to discharge, demote, suspend, threaten, intimidate, harass or in any manner discriminate against whistleblowers;

(iv)     If a whistleblower brings his or her complaint to an outside regulator or other governmental entity, he or she will be protected from retaliation by the terms of the Whistleblower Policy just as if he or she directed the complaint to the Audit Committee, Risk Committee, and/or the third-party reporting service provider.

(d)     Include information regarding the third-party reporting service provider and make clear that it is available to assist on matters pertaining to alleged corruption, fraud, or similar unlawful activities at Mullen.

# EXHIBIT 2



# Risk Committee Charter

PURPOSE

The purpose of the Risk Committee (the "Committee") of the Board of Directors (the "Board") of Mullen Automotive Inc. (the "Company") shall be to discharge the Board's responsibilities relating to oversight of the Company's risk management policies and framework.


MEMBERSHIP

The Committee members will be appointed by, and will serve at the discretion of, the Board. The Committee will consist of at least three members. The Board may designate one member of the Committee as its chair. Each member of the Committee shall be deemed an "Independent Director" as defined by the listing standards of the Nasdaq Stock Market, Inc. (the "Nasdaq Rules"). Additionally, each member of the Committee shall be deemed a "non-employee director" as defined in Rule 16b-3 promulgated under Section 16 of the Securities Exchange Act of 1934 (as amended) and an "outside director" as defined in Section 162(m) of the Internal Revenue Code of 1986 (as amended).


RESPONSIBILITIES AND AUTHORITY

The responsibilities and authority of the Committee shall include such responsibilities and authority delegated by the Board and the following:

1.  The Committee shall be primarily responsible for the risk management policies of the Company's operations and oversight of the operation of the Company's risk management framework.

2.  The Committee shall be responsible for monitoring the Company's compliance with all public reporting requirements as well as all internal risk assessment, risk management practices, and internal reporting conducted by employees.

Imagine
What's Possible™



3.    The Committee shall be responsible for identifying material risks relating to the Company's compliance with all applicable laws and regulations and public disclosures about the Company's business affairs, financial reporting, and risk exposure.

4.    The Committee shall have free and open access to management and Company employees for the purpose of identifying material risks relating to the Company's compliance procedures.

5.    The Committee, with the assistance of the Audit Committee, shall be responsible for monitoring compliance with the Company's Code of Business Conduct and Ethics (the "Code of Conduct"). In the event that a violation of the Code of Conduct is sufficiently material to trigger a disclosure obligation, the Committee shall report the violation to the full Board.

6.    The Committee shall assist the Audit Committee, at its request, in carrying out its responsibilities with respect to financial, business and cybersecurity risks.

7.    The Committee shall retain a third-party reporting service who will establish a telephone number, website, and email address specific to the Company. The Committee shall ensure that such third-party provider shall promptly report in writing any credible complaint to the Committee and the Audit Committee within three (3) business days of receipt. The Committee shall ensure that contact information for the third-party reporting service, including its telephone number, email address, and website URL, shall be posted on the Company's website and elsewhere so as to be available not only to employees, but also to customers, vendors, and other third parties. The Committee shall ensure that the third-party telephone number, email address, and website shall provide an anonymous communication channel for employees and other stakeholders to report their concerns regarding, among other things, the integrity of the Company's public disclosures, internal controls, auditing, financial reporting, accounting matters, insider

Imagine
What's Possible™



sales, and other matters. The Committee shall ensure that employees may also use this communication channel to report concerns relating to ethical business or personal conduct, integrity, and professionalism. The Committee shall ensure that all anonymous whistleblower complaints are provided to the Company's legal counsel, that all complaints are completely and fully investigated to the extent recommended by the Company's legal counsel, and that any appropriate remedial action is taken. The Committee shall ensure that the Company's nonretaliation policy is strictly complied with in order to protect any employee who reports a complaint via the third-party reporting service.

8.      The Committee shall make regular reports to the full Board regarding the Committee's activities, as the Committee deems appropriate.

9.      The Committee shall have the authority to retain separate and independent advisors or counsel to aid in fulfilling its responsibilities under its charter, which shall be at the Company's expense, without seeking approval of the Board.

10.     Nothing herein shall abrogate the risk assessment and oversight responsibilities of the Board and its existing committees.

11.     The Committee shall periodically review its own charter, performance, structure, processes and membership requirements.


MEETINGS

The Committee will meet separately as necessary, but not less than four times a year, to fulfill its responsibilities. The Committee will keep adequate minutes of its proceedings and will report on its actions and activities to the Board. A majority of the members of the Committee shall constitute a quorum for the transaction of business. Approval of any matter by a majority of the members present at a meeting in which a quorum is present shall constitute approval of that matter by the Committee. The Committee may also act by unanimous written consent without a meeting.

Imagine
What's Possible™

# EXHIBIT 3



# Disclosure Committee Charter

PURPOSE

The Disclosure Committee (the "Committee") is a management-level disclosure committee at Mullen Automotive Inc. (the "Company"). The primary function of the Committee is to assist the Company's officers and directors in fulfilling the Company's and their responsibilities regarding (i) the identification and disclosure of material information about the Company and (ii) the accuracy, completeness, and timeliness of the Company's financial reports and U.S. Securities and Exchange Commission ("SEC") filings. The Committee is appointed by the Company's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") (the "Certifying Officers").

MEMBERSHIP

The Committee shall consist of the Company's CEO (who shall serve as Chair of the Committee, unless and until the Company's CEO may appoint a different Chair), CFO, legal counsel, at least one other senior officer with day-to-day oversight of the key functional areas of the Company, and such other members as the CEO may appoint to the Committee or such other persons as the Chair may invite to participate from time to time.

MEETINGS

The Committee shall meet prior to each Annual Report and Quarterly Report required to be filed with the SEC, and at such other times as designated by the Chair. The Committee shall adopt, whether formally or informally, such procedures as it deems necessary to facilitate the fulfillment of its responsibilities.

RESPONSIBILITIES AND AUTHORITY

The Committee shall have the following duties and responsibilities:

1. The Committee shall review the Company's Annual Report on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K, proxy statements, any other filings under the Securities Exchange Act of 1934, registration statements filed under the Securities Act of 1933, and material press releases, as appropriate (collectively, the "Disclosure Statements")

Imagine
What's Possible™



and ensure that appropriate information is properly included in the Disclosure Statements.

2.     The Committee shall review and implement the Company's controls and other procedures ("Disclosure Controls and Procedures") to ensure that (i) information required to be disclosed by the Company in periodic and other reports filed with the SEC is recorded, processed, summarized and reported accurately and on a timely basis, and (ii) such information is accumulated and communicated to senior management as appropriate to allow timely decisions regarding required disclosure.

3.     The Committee shall establish procedures and review timelines relating to the preparation and filing of the Company's quarterly earnings, press releases, and periodic SEC reports, including disclosure policies, and lines of communication, to ensure that relevant Company personnel timely report to the Committee information potentially requiring disclosure, in coordination with other groups within the Company, as appropriate.

4.     The Committee shall coordinate with other Company senior officers, independent accountants, internal auditors, outside legal counsel, and the Audit Committee, as necessary.

5.     The Committee shall evaluate the integrity and effectiveness of the Disclosure Controls and Procedures as of the end of the period covered by each Quarterly Report and Annual Report, including through the use of outside counsel or consultants as the Chair deems useful and appropriate.

6.     The Committee shall provide appropriate sub-certifications as the Chair may deem necessary to the Certifying Officers before filing each Disclosure Statement.

7.     The Chair shall schedule and preside over meetings and ensure the timely preparation of agendas and written minutes from Meetings.

8.     Any interpretation of this Charter or the Committee's procedures shall be made by the Chair.

9.     The Committee shall have such other responsibilities, consistent with the Committee's purpose, as the CEO may assign to it from time to time.

10.    The Certifying Officers, at their option and at any time and from time to time, may assume any or all of the responsibilities of the Committee identified in this Charter, including approving Disclosure Statements when time does not permit the full Committee (or the designated individuals) to meet or act.

11.    The Committee shall have appropriate access to the Company's books, records, assets, facilities, and personnel, including the internal auditors, in connection with fulfilling its responsibilities.



12. The Committee will review and reassess this Charter from time to time and recommend any proposed changes. Any changes to the Committee's Charter must be approved by the Certifying Officers.

Imagine
What's Possible™

# EXHIBIT 4



# Nominating and Corporate Governance Committee Charter

PURPOSE

The purpose of the <u>Nominating and</u> Corporate Governance ~~and Nominating~~ Committee (the "Committee") of the Board of Directors (the "Board") of Mullen Automotive, Inc. (the "Company") shall be to review and make recommendations to the Board on matters concerning corporate governance; Board composition; identification, evaluation, and nomination of director candidates; composition of Board committees<u>;</u> and conflicts of interest.

In furtherance of these purposes, the Committee will undertake those specific duties and responsibilities listed below and such other duties as the Board may from time to time prescribe.


MEMBERSHIP

The Committee members shall be appointed by, and shall serve at the discretion of, the Board. The Committee shall consist of no fewer than three members of the Board. The Board may designate one member of the Committee as its chair. The Committee may form and delegate authority to subcommittees when appropriate. Members of the Committee shall not have a relationship with the Company or its affiliates that may interfere with the exercise of their independence and shall otherwise be deemed "Independent Directors" as defined by the listing standards of the Nasdaq Stock Market, Inc. (the "Nasdaq Rules"). <u>Membership of the Committee shall be reviewed annually by the Committee and approved by the Board.</u>


RESPONSIBILITIES AND DUTIES

The responsibilities and duties of the Committee shall include:



<u>Corporate Governance</u>

1.    Reviewing annually the principles of corporate governance approved by the Board, including the Company's Code of Business Conduct and Ethics and Corporate Governance Guidelines, to ensure that they remain relevant and are being complied with and monitored by management, recommending changes to the Board, as necessary.

2.    <u>Ensuring that the Company's Corporate Governance Guidelines, and any amendments thereto, are promptly made available to the public, through the Company's website or otherwise.</u>

3.    ~~2.~~Overseeing the Company's corporate governance practices, including reviewing proposed changes to the Company's Certificate of Incorporation and Bylaws<u>,</u> and making recommendations to the Board.

4.    ~~3.~~Determining the manner stockholders may send communications to the Board (as a whole or individually), as well as the process by which stockholder communications will be relayed to the Board and what the Board's response, if any, should be.

5.    ~~4.~~Reviewing periodically the succession planning for the Chief Executive Officer and other executive officers, reporting its findings and recommendations to the Board, and working with the Board in evaluating potential successors to these executive management positions.

6.    ~~5.~~Reviewing any stockholder proposals properly submitted for action at the annual meeting of stockholders and recommending Board responses.

7.    ~~6.~~Overseeing compliance by the Board and its committees with applicable laws and regulations, including those promulgated by the Securities and Exchange Commission <u>(the "SEC")</u> and the Nasdaq Rules.

8.    ~~7.~~Reviewing the disclosure included in the Company's proxy statement regarding the Company's corporate governance practices, including its Board nomination process.

9.    ~~8.~~Investigating, or authorizing on its behalf an investigation of, any matter relating to any purpose, responsibility, duty, or

~~9.~~ power of the Committee set forth in this charter or applicable law, or delegated to the Committee by the Board, and obtaining unrestricted access to the Company's books, records, and employees in furtherance of any such investigation.

10.    Reviewing and recommending changes<u>,</u> if appropriate<u>,</u> to the Board with respect to~~,~~ its own charter, structure, membership requirements and processes on an annual basis.

Imagine
What's Possible™



11.    Reviewing the Company's policies and disclosures regarding the Company's environmental, social, and governance ("ESG") matters. The Committee will oversee the Company's disclosures to stockholders and other interested parties concerning ESG matters.

Board Composition, Evaluation and Nominating Activities

1.    Evaluating the independence of members of the Board and Board nominees against the independence requirements of the ~~Securities and Exchange Commission~~SEC, the Nasdaq rules, and other applicable laws.

2.    Overseeing the Board evaluation process, including conducting ~~periodic~~annual evaluations of the performance of the Board as a whole and each Board committee, and evaluating the performance of Board members eligible for ~~re- election~~re-election.

3.    Reviewing and making recommendations to the Board regarding the composition, structure, and size of the Board and determining the relevant criteria (including any minimum qualifications) for Board membership including issues of character, integrity, judgment, diversity, age, independence, skills, education, expertise, business acumen, business experience, length of service, understanding of the Company's business, other commitments, and the like.

4.    Establishing and periodically reviewing procedures for the submission of candidates for election to the Board (including recommendations by stockholders of the Company).

5.    Establishing procedures for identifying and evaluating nominees for Director.

6.    Reviewing and recommending candidates for election to the Board at the annual meeting of stockholders or at any special meeting of stockholders at which one or more directors are to be elected, in compliance with the Company's policies and procedures for consideration of Board candidates.

7.    Prospectively identifying, considering, and recommending candidates to fill new positions or vacancies on the Board~~; in performing these duties, the~~. The Committee shall have the authority, at the Company's expense, to retain or terminate any search firm to be used to identify Board candidates and shall have authority to approve the search firm's fees and other retention terms. Further, in





performing these duties, the Committee shall perform a background check of each
candidate for the Board and shall meet with each candidate prior to his or her
nomination to the Board, and then shall recommend to the full Board whether such
individual shall be nominated for membership to the Board.

8.    Reviewing and making recommendations to the Board with respect to the Directors'
stock option grants under the ~~2010~~2022 Equity Incentive Plan (as amended) and any
proposed amendments thereto, subject to obtaining stockholder approval of any
amendments as required by applicable law or the Nasdaq Rules.

9.    Evaluating and making recommendations for orientation and continuing education
activities of Board members.





<u>Board Committees</u>

1.    Periodically reviewing the charter, size and composition of each Board committee and making recommendations to the Board for the creation of additional Board committees or a change in mandate or dissolution of Board committees.

2.    Recommending to the Board persons to be members of the various Board committees.

<u>Conflicts of Interest</u>

In performing its duties, the Committee shall have the authority, at the Company's expense, to retain, hire, and obtain advice, reports, or opinions from internal or external legal counsel, search firms, and expert advisors to assist with the execution of the Committee's duties and responsibilities as set forth in this charter or applicable law, or delegated to the Committee by the Board.

Other duties assigned, include:

1.    Reviewing and approving the Company's Code of Business Conduct and Ethics for all personnel.

2.    Considering questions of possible conflicts of interest of Board members and of corporate officers.

3.    Reviewing actual and potential conflicts of interest of Board members and corporate officers, other than related party transactions reviewed by the Audit Committee and approving or prohibiting any involvement of such persons in matters that may involve a conflict of interest or taking of a corporate opportunity.

MEETINGS

The Committee will meet as often as may be deemed necessary or appropriate, in its judgment, to fulfill its responsibilities, but not less than two times a year. The Committee may meet either in person or telephonically, and at such times and places as the Committee determines. The Committee may establish its own meeting schedule, which it will provide to the Board. The Committee may invite to its meetings



Imagine
What's Possible™

(Mod) *[Link-to-previous setting changed from on in original to off in modified.].*

MULLEN

other Board members, Company management, outside counsel, independent auditors, and such other persons as the Committee deems appropriate to carry out its responsibilities. The chairperson of the Committee shall preside at each meeting; if a chairperson is not designated or present, an acting chair may be designated by the Committee members present.

MINUTES

The Committee will maintain written minutes of its meetings, which will be filed with the minutes of the meetings of the Board.

REPORTS

The Chair of the Committee shall make regular reports to the full Board on the actions and recommendations of the Committee.

COMPENSATION

Members of the Committee shall receive such fees, if any, for their service as Committee members as may be determined by the Board in its sole discretion.

Imagine
What's Possible™

# EXHIBIT 5



# Compensation Committee Charter

PURPOSE

The purpose of the Compensation Committee (the "Committee") of the Board of Directors (the "Board") of Mullen Automotive, Inc. (the "Company") shall be to discharge the Board's responsibilities relating to the compensation of the Company's executive officers and members of the Board and the administration of the Company's employee benefit plans.

The Committee shall assist the Board in administering and overseeing:

1.    the Company's compensation policies, plans, and benefit programs;

2.    the compensation of the Company's executive officers and members of the Board; and

3.    the administration of the Company's employee benefit plans.


MEMBERSHIP

The Committee members will be appointed by, and will serve at the discretion of, the Board. The Committee will consist of at least two members of the Board. The Board may designate one member of the Committee as its chair. Each member of the Committee shall be deemed an "Independent Director" as defined by the listing standards of the Nasdaq Stock Market, Inc. (the "Nasdaq Rules"). Additionally, each member of the Committee shall be deemed a "non-employee director" as defined in Rule 16b-3 promulgated under Section 16 of the Securities Exchange Act of 1934 (as amended) (the "Exchange Act") and an "outside director" as defined in Section 162(m) of the Internal Revenue Code of 1986 (as amended).


RESPONSIBILITIES AND AUTHORITY

The responsibilities and authority of the Committee shall include such responsibilities and authority delegated by the Board, and the following:

Imagine
What's Possible™



1.  Recommending to the Board a compensation philosophy designed to help the Company attract and retain the talent that the Company needs.

2.  Periodically reviewing and as appropriate, making recommendations to the Board with respect to the Chief Executive Officer's:

    a.  annual base salary;

    b.  bonus arrangements, if any;

    c.  equity compensation;

    d.  any employment agreement, severance arrangement or change in control arrangement; and

    e.  any other benefits, compensation, or arrangements, based on an evaluation of his or her performance and other relevant criteria as determined by the Compensation Committee. The Chief Executive Officer shall not be present during voting or deliberations regarding his or her compensation.

3.  In consultation with the Chief Executive Officer, periodically reviewing the compensation arrangements of the other executive officers with respect to:

    a.  annual base salary;

    b.  bonus arrangements, if any;

    c.  equity compensation;

    d.  any employment agreement, severance arrangement or change in control arrangement; and

    e.  any other benefits, compensation, or arrangements.

4.  In determining, setting, or approving annual short-term compensation arrangements, taking into account the particular executive's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures; this shall not affect payments or benefits that are required to be paid pursuant to the Company's plans, policies, or agreements.

5.  In determining, setting, or approving termination benefits and/or separation pay to executive officers, taking into consideration the circumstances surrounding the particular executive officer's departure and the executive's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures; this shall not affect payments or benefits that are required to be paid pursuant to the Company's plans, policies, or agreements.

6.  Making recommendations to the Board with respect to compensation for service as a member of the Board or a Board committee.

7.  Making recommendations to the Board with respect to all forms of compensation plans.

8.  Considering the most recent "say on pay" vote and any other resolutions adopted by the stockholders of the Company relating to executive compensation, in evaluating



and making recommendations to the Board with respect to executive and employee compensation.

9. ~~6.~~ Having the sole authority to retain, as appropriate (including only after taking into consideration the factors prescribed by the Nasdaq rules, <u>determining whether the individual(s) have any conflicts of interest in accordance with Exchange Act rules and determining whether the individual(s) are independent of the Company as determined by the factors specified by Nasdaq and Exchange Act rules</u>) and at the Company's expense, any compensation consultant, outside legal, accounting, or other advisors to advise or assist the ~~Compensation~~ Committee in the performance of any of the responsibilities and duties set forth in this charter and terminate such engagements as the ~~Compensation~~ Committee may deem necessary. <u>The Compensation Committee shall be directly responsible for the appointment, compensation and oversight of the work of any compensation consultant, outside legal, accounting, or other advisors that assists the Compensation Committee.</u>

*[Link-to-previous setting changed from on in original to off in modified.].*



(Mod)

10.~~7.~~Overseeing and reviewing, on at least an annual basis, the assessment and mitigation of risks associated with the Company's compensation practices.

11.    ~~8.~~Reviewing and discussing with management the Company's ~~Compensation~~ Discussion and Analysis (the "CD&A") and related disclosures required by SEC rules and recommending the final CD&A to the Board for inclusion in the Company's annual report on Form 10-K or proxy statement.

12.    ~~9.~~Overseeing the preparation of the report of the ~~Compensation~~ Committee required by SEC rules to be included with the Company's annual report on Form 10-K or proxy statement.

13.    ~~10.~~Overseeing the administration of material employee benefit plans of the Company, including the Company's equity plans, benefit plans and any 401(k) plans or similar plans.

14.    ~~11.~~Overseeing and reviewing the actions of any officers of the Company that may from time to time be designated by the Board or the ~~Compensation~~ Committee to administer any of the Company's equity plans, including by determining the maximum equity awards that may be granted by such officers and any other limitations pursuant to applicable law or as the ~~Compensation~~ Committee may deem appropriate.

15.    ~~12.~~Investigating, or authorizing on its behalf an investigation of, any matter relating to any purpose, responsibility, duty, or power of the ~~Compensation~~ Committee set forth in this charter or applicable law, or delegated to the ~~Compensation~~ Committee by the Board, and obtaining unrestricted access to the Company's books, records, and employees in furtherance of any such investigation.

16.    ~~13.~~Reviewing its own charter (at least annually), performance, structure, processes, and membership requirements.


MEETINGS

The ~~Compensation~~ Committee will meet separately as necessary, but not less than four times a year, to fulfill its responsibilities. The Committee will keep adequate minutes of its proceedings and will report on its actions and activities to the Board. A majority of the members of the Committee shall constitute a quorum for the transaction of business. Approval of any matter by a majority of the members present at a meeting in which a quorum is present shall constitute approval of that matter by the Committee. The Committee may also act by unanimous written consent without a meeting.

Imagine
What's Possible™

# EXHIBIT 6



# Corporate Governance Guidelines

## I.  Introduction

These Corporate Governance Guidelines are established by the Board of Directors **(the "Board")** of Mullen ~~Technologies,~~**Automotive** Inc. (**the** "~~MTI~~**Company**") to provide a structure within which our directors and management can effectively pursue ~~MTI's~~**the Company's** objectives for the benefit of our stockholders. The Board intends these guidelines to serve as a flexible framework within which the Board may conduct its business, not as a set of binding legal obligations. These guidelines should be interpreted in the context of all applicable laws, ~~MTI's~~**the Company's** charter documents and other governing legal documents and ~~MTI~~**Company** policies, which shall prevail in the case of a conflict with these guidelines.

## II.  Board Structure and Composition

1.  <u>Size of the Board.</u> The authorized number of directors will be determined from time to time by resolution of the Board.

2.  <u>Board Membership Criteria.</u> ~~MTI's~~**The Company's** Nominating and Corporate Governance Committee reviews and makes recommendations to the Board regarding the composition and size of the Board, determines the relevant criteria (including any minimum qualifications), and recommends to the Board the slate of nominees for election at the Annual Meeting of Stockholders or nominees for election to fill interim vacancies on the Board.

3.  <u>Director Independence.</u> A majority of directors on the Board will be independent as required by the ~~NASDAQ~~**Nasdaq** Stock Market **(as amended from time to time)**. The Board also believes that it is often in the best interest of ~~MTI~~**the Company** and its stockholders to have non-independent directors, including current and (in some cases) former members of management, serve as directors. Each independent director who experiences a change in circumstances that could affect such director's independence should deliver a notice of such change to ~~MTI's General Counsel.~~**the Company's chief legal officer. The Board shall make a determination at least annually and at other times required by the Nasdaq Stock Market rules or applicable laws as to the independence of each director.**

4.  <u>Director Tenure.</u> Directors are reelected every three years and the Board does not believe it should establish term limits because directors who have developed increasing insight into ~~MTI~~**the Company** and its operations over time provide an



Imagine
What's Possible™



increasing contribution to the Board as a whole. **It is the policy of the Board that there shall be no retirement age for directors which would have the disadvantage of discontinuing the availability and contributions of directors who are otherwise capable and valuable members of the Board.**





5.      Lead Independent Director. An important component of the Board's leadership structure is having a Lead Independent Director in place with broad authority to direct the actions of the independent directors and regularly communicate with the Chief Executive Officer.

III.    Principal Duties of the Board of Directors

1.      To Oversee Management and Evaluate Strategy. The fundamental responsibility of the Board is to exercise their business judgment to act in what they reasonably believe to be the best interests of ~~MTI~~**the Company** and its stockholders. It is the duty of the Board to oversee management's performance to ensure that ~~MTI~~**the Company** operates in an effective, efficient, and ethical manner. Additionally, the Board has responsibility for risk oversight, with reviews of certain areas being conducted by the relevant board committees.

Directors are expected to invest the time and effort necessary to understand ~~MTI's~~**the Company's** business and financial strategies and challenges. The basic duties of the directors include attending Board and committee meetings and actively participating in Board and committee discussions. Directors are **expected to attend all Board meetings and the meetings of the committees on which they serve. Directors are also encouraged to attend the Company's annual meeting of stockholders. Directors are** also expected to make themselves available outside of board meetings for advice and consultation.

2.      To Select the Chair and Chief Executive Officer. The Board will select the chairman of the Board and the chief executive officer in compliance with ~~MTI's~~**the Company's** Certificate of Incorporation and Bylaws.

3.      To Evaluate Management Performance and Compensation. Periodically, the Compensation Committee will evaluate the performance of the chief executive officer and other executive officers and review and approve the compensation plans, policies and arrangements for such executives. It will also evaluate the compensation plans, policies and programs for officers and employees to ensure they are appropriate, competitive and properly reflect ~~MTI's~~**the Company's** objectives and performance.

4.      To Review Management Succession Planning. The Nominating and Corporate Governance Committee will periodically review the succession planning for ~~MTI's~~**the Company's** executive officers, report its findings and recommendations to the Board, and work with the Board in evaluating potential successors to these executive management positions.

5.      To Monitor and Manage Potential Conflicts of Interest. **Directors are expected to avoid actions or interests that conflict with the interests of the Company. If an**





(Del) MULLEN

**actual or potential conflict of interest arises, the director should report the matter immediately to the Nominating and Corporate Governance Committee.** The Nominating and Corporate Governance Committee is responsible for considering questions of possible conflicts of interest of Board members and of corporate officers and reviewing actual and potential conflicts of interest of Board members and corporate officers. The Audit Committee will review and approve all related party transactions for which audit committee approval is required by applicable law or the rules of the NASDAQ Stock Market.

6. <u>To Ensure the Integrity of Financial Information.</u> The Audit Committee assists the Board in oversight of the integrity of ~~MTI's~~**the Company's** financial statements, ~~MTI's~~**the Company's** compliance with legal and regulatory requirements and ~~MTI's~~**the Company's** internal accounting and financial controls. The Audit Committee reports to the Board on a regular basis regarding such oversight.

7. <u>To Monitor the Effectiveness of Board Governance Practices.</u> The Nominating and Corporate Governance Committee will review and evaluate the effectiveness of the governance practices under which the Board operates and make changes to these practices as needed.

IV.   Board Procedures

Directors are expected to prepare for, attend, and contribute meaningfully to Board and applicable committee meetings to discharge their obligations. Consistent with their fiduciary duties, directors are expected to maintain the confidentiality of the deliberations of the Board and its committees.

1. <u>Frequency of Board Meetings.</u> Regular meetings of the Board shall be held at such times and places as determined by the Board. There will be at least four regularly scheduled Board meetings each year, but the Board will meet more often if necessary.

2. <u>Other Commitments.</u> Each member of the Board is expected to ensure that other existing and future commitments, including employment responsibilities and service on the boards of other entities, do not materially interfere with the member's service as director. ~~Board members should not have more public company memberships than would allow them to effectively and productively be a member of MTI's board.~~**Independent directors shall serve on no more than two other additional public company boards of directors while serving as a director of the Company.**

3. <u>Executive Sessions of Independent Directors.</u> ~~NASDAQ~~**Nasdaq** rules require independent Board members to regularly meet in executive session. The independent Board members shall meet regularly **(with a minimum of twice a year)** in executive session and/or as necessary. Committees of the Board may also meet in executive session, as necessary.

4. <u>Board Access to Management.</u> Members of the Board will have access to ~~MTI's~~**the Company's** management and employees as needed to fulfill their duties.

5. <u>Code of Business Conduct and Ethics.</u> ~~MTI~~**The Company** has adopted a Code of Business Conduct and Ethics to provide guidelines for the ethical conduct by directors, officers and employees. The Code of Business Conduct and Ethics is posted on ~~MTI's~~**the Company's** website and directors, officers and employees are expected to be familiar with it and comply with it.



Imagine
What's Possible™



6. <u>Engaging Experts.</u> In performing its duties, the Board and each committee shall have the authority, at ~~MTI's~~**the Company's** expense, to retain, hire, and obtain advice reports or opinions from internal or external legal counsel and expert advisors, as they may deem necessary





or appropriate, without consulting with, or obtaining approval from, management of ~~MTI~~**the Company** in advance.

V.   Board Committees

1.   <u>Number and Composition of Committees.</u> The Board currently has the following standing committees: Audit Committee, Nominating and Corporate Governance Committee, **Risk Committee,** and Compensation Committee. From time to time the Board may form a new committee or disband a current committee. Each committee may create one or more subcommittees, and each subcommittee shall consist of one or more members of the committee. Each **Committee shall operate pursuant to its own written charter, which will set forth the goals and responsibilities of each committee. Each** committee complies with the independence and other requirements established by applicable law and regulations, including SEC and NASDAQ rules.

2.   <u>Committee Appointments.</u> Members of all standing committees are appointed by the Board. The Board determines the exact number of members and can at any time remove or replace a committee member.

3.   <u>Committee Proceedings.</u> The Chair of each committee of the Board will, in consultation with appropriate committee members and members of management, and in accordance with the committee's charter, determine the frequency and length of committee meetings and develop the committee's agenda.

VI.   Director Orientation and Continuing Education

~~MTI~~**The Company** provides an orientation program for new directors that includes written materials, oral presentations, and meetings with senior members of management. The orientation program is designed to familiarize new directors with ~~MTI's~~**the Company's** business and strategy. The Board believes that ongoing education is important for maintaining a current and effective Board. Accordingly, ~~the Board~~**all existing directors and all new members of the Board shall attend a National Association of Corporate Directors ("NACD") certified training program, or similar program, within one year of joining the Board. The Board also** encourages directors to participate in ongoing education, as well as participation in accredited director education programs.

VII.   Board Compensation

The Compensation Committee has the responsibility to review and make recommendations to the Board with respect to compensation for service as a member of the Board or a Board committee.



Imagine
What's Possible™



VIII.   Auditor Rotation

The Audit Committee will ensure that the lead audit partner and the audit review partner be rotated every five (5) years as is required by SEC rules.

IX.   Communications with Stockholders

> 1.   <u>Stockholder Communications to the Board</u>. Stockholders may contact the Board to provide comments, to report concerns including issues related to ~~MTI's~~**the Company's** accounting practices, internal controls, financial statements, or auditing matters, or to ask questions at the following address:
>
> > Corporate Secretary
> > 1405 Pioneer ~~St.~~**Street**
> > Brea, CA  92821
>
> 2.   Annual Meeting of Stockholders. Although ~~MTI~~**the Company** does not have a formal policy regarding attendance by members of the Board of Directors at ~~MTI's~~**the Company's** annual meeting of stockholders, ~~MTI~~**the Company** encourages directors to attend.

XII. Periodic Review of the Corporate Governance Guidelines

These guidelines shall be reviewed periodically by the Nominating and Corporate Governance Committee and the Board will make appropriate changes based on recommendations from the Nominating and Corporate Governance Committee.



Imagine
What's Possible™

# EXHIBIT 7



# Whistleblower and Non-Retaliation Policy

PURPOSE

Every employee of Mullen Automotive Inc. and its subsidiaries (collectively, the "Company") has a duty to adhere to the Company's Code of Business Conduct and Ethics and to comply with applicable laws. If an employee is aware of illegal practices or observes behaviors or circumstances that the employee believes violate the Code of Business Conduct and Ethics, the Company encourages the employee to report the matter immediately.

The Company is committed to complying with statutory regulations and upholding internal commitments to integrity, compliance, and accountability. To meet these standards, employee reports of any observed misconduct are necessary. The Company likewise is committed to procedural fairness in the internal handling of reports, takes steps to ensure transparency, anonymity, and confidentiality, and to protect any employees who make reports from retaliation and discrimination.

This Whistleblower and Non-Retaliation Policy (the "Whistleblower Policy") was adopted to:

- Demonstrate an internal commitment to conducting business with honesty and integrity, and in accordance with applicable law;
- Establish guidance for reporting illegal practices and violations of the Code of Business Conduct and Ethics;
- Comply with all whistleblowing legislation and regulations; and
- Make clear the Company's intention to protect employees from retaliation when reports are made in good faith.

SCOPE AND APPLICABILITY

All employees have a responsibility to report illegal activity, misconduct or unethical conduct that falls under the scope of this policy. Disclosable matters include those that violate the Code of Business Conduct and Ethics, and/or applicable laws, including, but not limited to, criminal activity, violations of human rights, unfair practices against employees, acts against the interest of the company, and regulatory breaches.

The following is a <u>non-exhaustive</u> list of examples of behaviors that violate the Code of Business Conduct and Ethics and/or applicable laws:

Imagine
What's Possible™



- *Inappropriate accounting practices*: any conduct that adversely impacts the quality or integrity of financial statements; any attempt to interfere with an independent or internal audit; any attempt to override internal accounting, auditing, or financial controls or policies impacting the integrity of the Company's financial reporting; misrepresentations or false statements to or by a senior officer or accountant regarding a matter contained in the Company's financial records, financial reports, or audit reports; or deviation from the full and fair reporting of the Company's financial condition.

- *Corruption, fraud, or unlawful activities*: any conduct by a Company employee or director that involves corruption or defrauding the Company or investors, or any other unlawful activity.

- *Inappropriate gifts and entertainment*: using bribery or kickbacks in business relationships with customers, suppliers, or government officials; offering or accepting hospitality, favors or other gifts that are excessive or that impact business judgment; offering or accepting cash in any amount.

- *Transacting business with prohibited parties*: transacting business with companies or individuals located in prohibited countries, or sending products or payments to, or receiving supplies or payments from, persons located in these countries; transacting business with other companies or individuals in violation of applicable law.

- *Retaliation:* retaliation against employees or contractors who, in good faith, make reports regarding any of the foregoing items.

If you are uncertain whether something is within the scope of this policy, you should seek advice from the Legal department.


MAKING A REPORT

If an employee believes that an illegal act or breach of the Code of Business Conduct and Ethics has occurred, the employee should report the violation to the employee's manager or Human Resources representative, to the Company's Ethics Hotline, and/or to the Company's Board of Directors Risk Committee or Audit Committee. All reports will be treated anonymously (if made anonymously) and in confidence.

The Company's Ethics Hotline is available online, via email, and at the toll-free telephone number listed below. Reports to the Ethics Hotline may be made anonymously. Any employee who makes a bad faith or knowingly false report may be disciplined, up to and including termination from employment.

Imagine
What's Possible™



Every report is forwarded to the Legal department for review, and all reports will be
appropriately investigated. The investigation process involves gathering facts and
determining whether there are grounds to suspect a violation. In connection with the
investigation of a report, the Legal department may consult with any member of
management who is not the subject of the report. Additionally, independent legal,
accounting, or other advisors may be retained as necessary or appropriate. The results
of the investigations will be assessed, and measures will be taken to address the matter
as appropriate. Whistleblower reports also are reported to the Company's Risk
Committee and Audit Committee who will present them to the full Board as determined
by the Risk Committee and the Audit Committee. The Legal department, Risk
Committee or Audit Committee will update, to the extent appropriate and practicable,
each person who files a report to inform him or her of the status of the investigation.

The identity of any employee making a report will be treated confidentially, except to the
extent required to investigate the report or as necessary to implement remedial actions
or comply with legal obligations. All personal data of employees will be treated in
accordance with the Company's data protection policies and applicable law.

WHISTLEBLOWER PROTECTIONS AND NON-RETALIATION

The Company encourages a culture of openness where employees, former employees,
and others can raise concerns or report violations or suspected violations of law or
regulations, without fear of retaliation or reprisals. The Company does not in any way
intend to restrict, impede, or interfere with individuals' rights or ability to
(1) communicate, without notice to or approval by the Company, with any government
agencies or regulatory authorities as provided for, protected under and/or warranted by
applicable law or regulation; (2) participate in any investigation or proceeding that may
be conducted by any government agency or regulatory authority, including providing
documents or other information without notice to the Company; or (3) receive an award
from any government agency or regulatory authority in connection with their providing
such information or participating in any investigation or proceeding. Any person who
makes such a report to a government agency or regulatory authority will be protected
from retaliation to the full extent provided by this Whistleblower Policy.

This provision applies in all situations and is meant to clarify and supersede any and all
prior statements, policies, or procedures (including all other sections of this
Whistleblower Policy and the Code of Business Conduct and Ethics), as well as any
contracts or agreements made by the Company with any persons or entities.

The Company's policy is to strictly prohibit retaliation of any kind against any employee,
director, officer, or other person who in good faith reports any suspected violations of
law or regulations to any government agency, reports a violation of the Code of
Business Conduct and Ethics or applicable law, or who provides information relating to
the accounting and auditing matters discussed herein that he or she reasonably
believes to be true. The following is a non-exhaustive list of examples of prohibited acts

Imagine
What's Possible™



of retaliation: revealing the identity of any person who makes a report and asks that his or her identity remain confidential (unless compelled by judicial or another legal process); discharging an employee; demoting an employee; suspending an employee; changing an employee's job function; diminishing an employee's duties or responsibilities; and/or threats, intimidation or other adverse employment consequences. Any employee who engages in retaliatory conduct may be disciplined, up to and including termination from employment.

Knowingly raising false accusations or making knowingly false reports is a serious offense, and is not protected under this Policy.

---

RELATED POLICIES

- Mullen Automotive Inc. Code of Business Conduct and Ethics

ETHICS HOTLINE NUMBER

[INSERT HOTLINE NUMBER AND EMAIL ADDRESS HERE]

Imagine
What's Possible™

# EXHIBIT A

**EXHIBIT A**

1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12 IN RE MULLEN AUTOMOTIVE, INC. DERIVATIVE LITIGATION | Case No. 2:22-cv-05336-DMG-AGR |
| 13 | |
| 14 | Honorable Dolly M. Gee |
| 15 | **[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION AND PROVIDING FOR NOTICE** |
| 16 | |
| 17 | |
| 18 | |
| 19 | |

20

21

22

23

24

25

26

27

28

WHEREAS, a consolidated derivative action is pending in this Court captioned *In re Mullen Automotive, Inc. Derivative Litigation*, Case No. 2:22-cv-05336-DMG-AGR (C.D. Cal.) (the "Consolidated Derivative Action");

WHEREAS, Plaintiffs have moved with the Settling Defendants' and Mullen's consent, pursuant to Federal Rule of Civil Procedure ("Rule") 23.1, for an order: (i) preliminarily approving the settlement of the Consolidated Derivative Action, in accordance with a Stipulation and Agreement of Settlement dated August 21, 2024 (the "Stipulation"),[1] which, together with the Exhibits annexed thereto, set forth the terms and conditions for a proposed Settlement and dismissal of the Consolidated Derivative Action with prejudice; and (ii) approving the dissemination of notice of the Settlement through the Short-Form Notice and the Long-Form Notice; and

WHEREAS, this Court, having considered the Stipulation and the Exhibits annexed thereto and the arguments of the Settling Parties;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1.      This Court does hereby preliminarily approve, subject to further consideration at the Settlement Hearing described below, the Stipulation and the Settlement set forth therein, including the terms and conditions for settlement and dismissal with prejudice of the Consolidated Derivative Action.

2.      A hearing (the "Settlement Hearing") shall be held before this Court on _____, 2024 at __:__ _.m. in Courtroom 8C of the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, to determine whether the Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to Mullen Automotive Inc. ("Mullen" or the "Company") and its shareholders and should be approved by the Court; whether the District Court Approval Order and a Judgment as provided in ¶ V.1.6 and ¶ V.1.9 of the Stipulation should be entered herein dismissing the Consolidated Derivative

---

[1]     All capitalized terms contained herein not otherwise defined shall have the meanings as set forth in the Stipulation.

[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION AND PROVIDING FOR NOTICE

Action with prejudice; and whether and in what amount to award attorneys' fees and expenses to Plaintiffs' Counsel and reasonable service awards to Plaintiffs.

3.    The Court approves, as to form and content, the Notice of Proposed Derivative Settlement annexed hereto as Exhibit B (the "Long-Form Notice") and the Summary Notice of Proposed Derivative Settlement annexed hereto as Exhibit C hereto (the "Short-Form Notice"; together with the Long-Form Notice, the "Settlement Notice"), and finds that the publication of the Long-Form Notice and Short-Form Notice, substantially in the manner and form set forth in this Order, meets the requirements of Rule 23.1 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

4.    Not later than twenty (21) days following entry of this Order, Mullen shall: (1) post a copy of the Court-approved Long-Form Notice, in the form of Exhibit B, on the Investor Relations page of Mullen's website; (2) cause a copy of the Short-Form Notice, in the form of Exhibit C, to be published one time (*i.e.*, for one day) in *Investor's Business Daily*; and (3) cause a copy of the Short-Form Notice, in the form of Exhibit C, to be published on an electronic newswire such as *PRNewswire* or *GlobeNewswire*.    Mullen shall also update the litigation disclosure in its first quarterly filing with the U.S. Securities and Exchange Commission ("SEC") on Form 10-Q after entry of this Preliminary Approval Order to state that the Long-Form Notice can be found on the Investor Relations page of Mullen's website.

5.    All costs incurred in the publishing, and posting of the Long-Form Notice and the Short-Form Notice shall be paid by Mullen, and Mullen shall undertake all administrative responsibility for such publication and posting.

6.    Not later than fourteen (14) calendar days before the Settlement Hearing, Mullen's Counsel shall file with the Court proof, by affidavit or declaration, that it has complied with ¶ 4 above.

7.      All Mullen shareholders of record as of the date of this Order (the "Record Date") shall be bound by all orders, determinations, and judgments of the Court in the Consolidated Derivative Action concerning the Settlement, whether favorable or unfavorable to Mullen shareholders.

8.      Pending final determination by the Court of whether the Settlement should be approved, this Court preliminarily bars and enjoins the Settling Parties from instituting, commencing, prosecuting, continuing, or in any way participating in, whether directly or indirectly, representatively, individually, derivatively on behalf of Mullen, or in any other capacity, any of the Released Claims against any of the Released Persons.  For the avoidance of doubt, this provision shall not apply to any insurance claims the Settling Defendants or Mullen have against any of their insurers in connection with the Settlement or the Released Claims.  All proceedings and discovery in the Consolidated Derivative Action shall be stayed except as otherwise provided for in the Stipulation; however nothing herein shall in any way impair or restrict the rights of any of the Settling Parties to defend the Stipulation, to seek insurance coverage for the Settlement or the Released Claims, or to otherwise respond in the event any person or entity objects to the Stipulation, the proposed Judgment to be entered, the Fee and Expense Application, and/or any proposed fee order.

9.      Plaintiffs shall file and serve their opening brief in support of final approval of the Settlement and the Fee and Expense Application no later than forty-five (45) calendar days prior to the Settlement Hearing.  Plaintiffs may file a reply brief in further support of final approval of the Settlement and the Fee and Expense Application no later than ten (10) calendar days prior to the Settlement Hearing.

10.      At least twenty-one (21) days prior to the Settlement Hearing, Plaintiffs' Counsel shall cause Plaintiffs' motion in support of Court approval of the Settlement and Plaintiffs' Counsel's Fee and Expense Application to be posted on Plaintiffs' Counsel's websites at www.rosenlegal.com and www.gme-law.com.

11.    As set forth in the Notice, any Mullen shareholder, as of the Record Date, may appear and show cause, if he, she, or it has any reason why the terms of the Settlement or the Fee and Expense Application should not be approved as fair, reasonable and adequate, or why the District Court Approval Order and Judgment should not be entered thereon, provided, however, that, unless otherwise ordered by the Court, no Mullen shareholder, as of the Record Date, shall be heard or entitled to contest the approval of all or any of the terms and conditions of the Settlement, or, if approved, the District Court Approval Order and the Judgment to be entered thereon approving the same, unless that Person has, at least twenty-one (21) calendar days before the Settlement Hearing, mailed to Plaintiffs' Counsel appropriate proof of Mullen stock ownership, along with written objections, including the basis therefor, and copies of any papers and brief in support thereof.  All written objections and supporting papers must be mailed to Plaintiffs' Counsel and Defendants' Counsel as listed below:

<u>Plaintiffs' Counsel:</u>

**THE ROSEN LAW FIRM, P.A.**          **GAINEY McKENNA & EGLESTON**
Erica L. Stone, Esq.                              Gregory M. Egleston, Esq.
275 Madison Avenue, 40th Floor      260 Madison Avenue, 22nd Floor
New York, NY  10016                          New York, NY  10016

— and —

<u>Defendants' Counsel:</u>

**KING & SPALDING LLP**                  **FOLEY & LARDNER LLP**
Brian P. Miller, Esq.                             F. Phillip Hosp, Esq.
Southeast Financial Center              555 South Flower Street, Suite 3300
200 S. Biscayne Boulevard, Suite 4700          Los Angeles, CA  90071
Miami, FL  33131

Plaintiffs' Counsel shall file any written objections with the Court at least fourteen (14) days before the Settlement Hearing.  Any Mullen shareholder, as of the Record Date, who does not make an objection in the manner provided herein shall be deemed

4

to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement as incorporated in the Stipulation, and/or to the award of attorneys' fees and expenses to Plaintiffs' Counsel or service award to Plaintiffs, unless otherwise ordered by the Court, but shall otherwise be bound by the District Court Approval Order and the Judgment to be entered and the releases to be given.

12.    Any attorney hired by a Mullen shareholder for the purpose of objecting to the Settlement must file a notice of appearance with the Clerk of the Court no later than twenty-one (21) calendar days before the Settlement Hearing.

13.    Plaintiffs' Counsel and Defendants' Counsel are directed to promptly furnish each other with copies of any and all objections that are served upon them or otherwise come into their possession.

14.    At least five (5) calendar days prior to the Settlement Hearing, the Settling Parties may serve and file with the Court a joint response brief (or, at the Parties' discretion, separate response briefs) to any objections made in connection with the proposed Settlement.

15.    Neither the Stipulation nor the Settlement, including any Exhibits attached thereto, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (a) is or may be deemed to be or may be offered, attempted to be offered or used in any way as a concession, admission, or evidence of the validity of any Released Claims, or of any fault, wrongdoing, or liability of the Released Persons or Mullen; or (b) is or may be deemed to be or may be used as a presumption, admission, or evidence of, any liability, fault, or omission of any of the Released Persons or Mullen in any civil, criminal, administrative, or other proceeding in any court, administrative agency, tribunal, or other forum.  Neither the Stipulation nor the Settlement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, or to seek insurance coverage for the Settlement or the Released Claims,

and except that the Released Persons may file or use the Stipulation, the District Court Approval Order, and/or the Judgment, in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, standing, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

16.    Without further order of the Court, and upon written agreement by all Settling Parties, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions in the Stipulation, and may make non-material changes to the Stipulation or its Exhibits to confirm the intent of the Settling Parties.

17.    The Court reserves the right to adjourn the date of the Settlement Hearing or modify any other dates set forth herein without further notice to Mullen shareholders, and retains exclusive jurisdiction to consider all further applications arising out of or connected with the Settlement.  The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means.  The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to Mullen shareholders.

IT IS SO ORDERED.

DATED: _____

_____
THE HONORABLE DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT OF
CONSOLIDATED DERIVATIVE ACTION AND PROVIDING FOR NOTICE

# EXHIBIT B

**EXHIBIT B**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. DERIVATIVE LITIGATION | Case No. 2:22-cv-05336-DMG-AGR |
| | Honorable Dolly M. Gee |
| | **NOTICE OF PROPOSED DERIVATIVE SETTLEMENT** |

**TO:  ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF THE COMMON STOCK OF MULLEN AUTOMOTIVE INC. ("MULLEN" OR THE "COMPANY") AS OF _____ (THE "RECORD DATE").**

**PLEASE READ THIS NOTICE ("NOTICE") CAREFULLY AND IN ITS ENTIRETY.  THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF THE ABOVE-CAPTIONED CONSOLIDATED DERIVATIVE ACTION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS. YOUR RIGHTS MAY BE AFFECTED BY THESE LEGAL PROCEEDINGS.  IF THE COURT APPROVES THE SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE APPROVAL OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE RELEASED CLAIMS.**

**IF YOU HOLD MULLEN COMMON STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

Notice is hereby provided to you of the proposed settlement (the "Settlement") of this consolidated shareholder derivative litigation.  This Notice is provided by Order of the United States District Court for the Central District of California (the "Court").  It is not an expression of any opinion by the Court with respect to the truth

of the allegations in the litigation or merits of the claims or defenses asserted by or against any party.  It is solely to notify you of the terms of the proposed Settlement, and your rights related thereto.  The terms of the proposed Settlement are set forth in the written Stipulation and Agreement of Settlement dated August 21, 2024 ("Stipulation") that has been publicly filed with the Court.[1]

## I.    WHY THE COMPANY HAS ISSUED THIS NOTICE

Your rights may be affected by the settlement of the consolidated shareholder derivative action styled *In re Mullen Automotive, Inc. Derivative Litigation*, Case No. 2:22-cv-05336-DMG-AGR (C.D. Cal.) (the "Consolidated Derivative Action"). Plaintiffs Jeff Witt, Joseph Birbigalia and Hany Morsy (collectively, "Plaintiffs"), on behalf of themselves and derivatively on behalf of Mullen; individual defendants David Michery, Ignacio Novoa, Mary Winter, Kent Puckett, Mark Betor, William Miltner, Jonathan New, Jerry Alban and Oleg Firer (the "Settling Defendants"); and Nominal Defendant Mullen (together with Plaintiffs and the Settling Defendants, the "Settling Parties") have agreed upon terms to settle the above-referenced litigation and have signed the Stipulation setting forth those settlement terms.

On _____, 2024, at __:___ __.m., the Court will hold a hearing (the "Settlement Hearing") in the Consolidated Derivative Action. The purpose of

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

the Settlement Hearing is to determine: (i) whether the Settlement and Plaintiffs'
Counsel's Fee and Expense Application is fair, reasonable, and adequate and should
be finally approved; (ii) whether a final judgment should be entered and the
Consolidated Derivative Action dismissed with prejudice pursuant to the
Stipulation; and (iii) such other matters as may be necessary and proper under the
circumstances.

## II.    MULLEN DERIVATIVE LITIGATION

### A.    <u>The Consolidated Derivative Action</u>

On August 1, 2022, Plaintiffs Witt and Birbigalia filed a putative shareholder
derivative complaint (the "Witt Complaint") on behalf of Mullen in the Court, in the
case captioned *Witt v. Michery, et. al.*, Case No. 2:22-cv-05336-DMG-AGR,
asserting claims against the Settling Defendants for breach of fiduciary duties, unjust
enrichment, abuse of control, and waste of corporate assets, and asserting a claim
against Defendant Firer for violations of Section 14 of the Securities Exchange Act
of 1934 (the "Exchange Act").

A second putative shareholder derivative complaint was filed in the Court on
September 30, 2024, captioned *Morsy v. Michery, et. al.*, Case No. 2:22-cv-07139-
DMG-AGR (the "Morsy Complaint"), asserting claims similar to those asserted in
the Witt Complaint against the Settling Defendants for breach of fiduciary duties,

unjust enrichment, abuse of control, and waste of corporate assets, and violations of Section 14 of the Exchange Act.

Both the Witt Complaint and the Morsy Complaint allege that the Settling Defendants are liable to Mullen for purportedly permitting the issuance of a series of false and misleading statements, beginning on June 15, 2020, concerning Mullen's business prospects; specifically, that the Settling Defendants allegedly misrepresented Mullen's: (1) ability and timeline to produce and sell electric cars; (2) manufacturing facilities and capabilities; (3) battery technology development and capabilities; and (4) strategic partnerships and/or deals with third-parties and customer contracts. The Witt Complaint and the Morsy Complaint allege these purported misrepresentations caused Mullen's common stock to trade at artificially inflated prices, resulting in a decline in the price when the truth was publicly disclosed. The Settling Defendants expressly deny that either the Witt Complaint or the Morsy Complaint has asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever.

On November 8, 2022, the Court consolidated the Witt action with the Morsy action, and appointed Gainey McKenna & Egleston and The Rosen Law Firm, P.A. as Co-Lead Counsel for the Plaintiffs. Shortly thereafter, Plaintiffs and certain of the Settling Defendants filed a Joint Stipulation to Stay Derivative Litigation. The

Court's Order Staying Derivative Litigation was entered on November 30, 2022 ("Order Staying Derivative Action").

### B.    The Securities Class Action

The claims asserted in the Witt Complaint and Morsy Complaint are predicated on similar facts and circumstances to those alleged in a related securities class action case previously filed in the Court on May 5, 2022, captioned *In re Mullen Automotive, Inc. Securities Litigation*, Case No. 2:22-cv-03026-DMG-AGR (C.D. Cal.) (the "Securities Class Action").  The Securities Class Action, narrowed following a motion to dismiss, alleges that during the putative class period from June 15, 2020 through April 18, 2022, inclusive (the "Class Period"), defendants Mullen, Mullen Technologies Inc. ("Mullen Tech"), and Michery allegedly made materially false and misleading statements and/or omitted material information which artificially inflated the price of Mullen's common stock.  When the purported truth was allegedly publicly disclosed, the price of Mullen's common stock allegedly declined.  Following mediation and further discussions, the parties to the Securities Class Action agreed to settle the lawsuit for a settlement payment of $7.25 million – – which was the mediator's recommendation. On August 16, 2024, plaintiff in the Securities Class Action filed a motion for preliminary approval of the settlement.

## C.    <u>Settlement Negotiations</u>

On April 2, 2024, Plaintiffs and Mullen participated in a mediation session before Robert Meyer ("Mr. Meyer" or the "Mediator") of JAMS. On March 13, 2024, prior to the in-person mediation session, Plaintiffs sent a written settlement demand to explore a potential resolution of the Consolidated Derivative Action. Over the next several months, with the assistance of the Mediator, the Settling Parties engaged in extensive arm's-length negotiations regarding a possible resolution of the Consolidated Derivative Action. Ultimately, following these discussions conducted with Mr. Meyer's assistance, on June 3, 2024, the Settling Parties reached an agreement-in-principle to settle the Consolidated Derivative Action and executed a term sheet whereby Mullen agreed to adopt the corporate governance enhancements (the "Corporate Governance Enhancements"), subject to execution of a formal, final stipulation and agreement of settlement and related papers, and Court approval. The Corporate Governance Enhancements are summarized in Paragraph V.3 of the Stipulation as well as herein. The full text of the Corporate Governance Enhancements are attached to the Stipulation as Exhibits 1 to 7.

## III.    TERMS OF THE PROPOSED DERIVATIVE SETTLEMENT

The principal terms, conditions, and other matters that are part of the Settlement, which is subject to approval by the Court, are summarized below. This

summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation and its Exhibits, which have been filed with the Court.

Within ninety (90) days of the Judgment becoming Final, Mullen's Board shall adopt the Corporate Governance Enhancements summarized below, which shall remain in effect for no less than four (4) years from the date the Judgment becomes Final. Mullen acknowledges and agrees that the filing, pendency, and settlement of the Consolidated Derivative Action caused the adoption and implementation of the Corporate Governance Enhancements set forth below. Mullen acknowledges that the Corporate Governance Enhancements set forth below confer substantial benefits upon Mullen and its current shareholders.

## A.    **The Corporate Governance Enhancements**

Establishment of a Risk Committee. Mullen shall create a Board-level Risk Committee ("Risk Committee") to oversee the Company's risk management policies and framework. The Risk Committee shall consist of at least three (3) independent directors. The Board shall adopt and implement a formal charter for the Risk Committee, a copy of which is attached as Exhibit 2 to the Stipulation. Mullen shall post the Risk Committee Charter on its website promptly after adoption.

Creation of a Disclosure Committee. Mullen shall create a separate, management-level Disclosure Committee ("Disclosure Committee") that establishes

effective procedures and protocols at the Company relating to financial disclosures, to ensure that all of Mullen's significant public statements, including, but not limited to, SEC filings, material press releases, and Mullen's significant statements to non-Mullen individuals at public or private meetings, are reviewed for accuracy, integrity, and completeness, and for reviewing with management its ongoing compliance with these protocols and procedures. The Disclosure Committee members shall consist of, at least, Mullen's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), legal counsel, and at least one other senior officer with day-to-day oversight of the key functional areas of the Company. Mullen shall adopt and implement a formal Charter for the Disclosure Committee, a copy of which is attached as Exhibit 3 to the Stipulation. Mullen shall post the Disclosure Committee Charter on its website promptly after adoption.

Audit Committee's Company Assessment. The Audit Committee will perform a one-time internal assessment of internal controls in consultation with Mullen's outside auditors.

Improvements to the Nominating and Corporate Governance Committee Charter. Mullen shall amend the Nominating and Corporate Governance Committee Charter as reflected in the redlined version of the existing charter, attached as Exhibit 4 to the Stipulation. Mullen shall post the amended Nominating and Corporate Governance Committee Charter on its website promptly after adoption.

8

Improvements to the Compensation Committee Charter. Mullen shall amend the Compensation Committee Charter as reflected in the redlined version of the existing charter, attached as Exhibit 5 to the Stipulation. Mullen shall post the amended Compensation Committee Charter on its website promptly after adoption.

Executive Reports. All Mullen executives subject to the reporting requirements of Section 16 of the Exchange Act shall provide reports (either oral or written at the Board's discretion) regarding their respective areas of responsibility at all regularly scheduled quarterly Board meetings.

Improvements to Director Education. Mullen's Corporate Governance Guidelines state that Mullen currently "provides an orientation program for new directors that includes written materials, oral presentations, and meetings with senior members of management" and is "designed to familiarize new directors with [Mullen]'s business and strategy." Mullen shall bolster this program by requiring that all existing outside directors, and all new outside directors, attend a National Associate of Corporate Directors ("NACD") certified training program, or similar program, within one year of (a) entry of Final Judgment in the Consolidated Derivative Action, or (b) a new director joining the Board.

Board Composition and Practices. Mullen shall amend its Corporate Governance Guidelines as reflected in the redlined version of the existing guidelines attached as Exhibit 6 to the Stipulation.

Whistleblower Policy.  While Mullen's Code of Conduct indicates that the Company maintains "Whistle-Blower Policy and Procedures," Mullen's written policy is not publicly available on the Company's website and has not yet been formally adopted.  Mullen shall adopt and formalize the Whistleblower Policy (the "Whistleblower Policy"), a copy of which is attached as Exhibit 7 to the Stipulation. Mullen shall post the Whistleblower Policy on the Company's website and shall remind employees of the Whistleblower Policy in an employee communication to all current employees and to each new employee as he or she joins the Company.

## IV.   PLAINTIFFS' COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs' Counsel intends to apply to the Court for an award of attorneys' fees and expenses not to exceed $500,000.00 (the "Fee and Expense Application"), and Defendants have agreed not to oppose such Fee and Expense Application. Plaintiffs' Counsel also has informed Defendants that they intend to apply to the Court for service awards to Plaintiffs for the time and expenses Plaintiffs expended in the prosecution of the Consolidated Derivative Action of up to $2,000 each, or $6,000 in total, to be payable from any fees and expenses the Court awards to Plaintiffs' Counsel in connection with the Fee and Expense Application.

At least twenty-one (21) calendar days prior to the Settlement Hearing, Plaintiffs' motion in support of Court approval of the Settlement and Plaintiffs'

Counsel's Fee and Expense Application will be available for viewing on Plaintiffs'

Counsel's websites at www.rosenlegal.com and www.gme-law.com.

## V.    REASONS FOR THE SETTLEMENT

The Settling Parties have determined that it is desirable and beneficial that the

Consolidated Derivative Action, and all of their disputes related thereto, be fully and

finally settled in the manner and upon the terms and conditions set forth in the

Stipulation, and Plaintiffs and Plaintiffs' Counsel believe that the Settlement is in

the best interests of the Settling Parties, Mullen, and its shareholders.

### A.    Why Did the Settling Defendants Agree to Settle?

The Settling Defendants have denied and continue to deny each of the claims

and contentions alleged by Plaintiffs in the Consolidated Derivative Action.  The

Settling Defendants expressly have denied and continue to deny all allegations of

wrongdoing or liability against them, or any of them, arising out of, based upon, or

related to, any of the conduct, statements, acts or omissions alleged, or that could

have been alleged, in the Consolidated Derivative Action.  Without limiting the

foregoing, the Settling Defendants have denied and continue to deny, among other

things, that they breached their fiduciary duties or any other duty owed to Mullen or

its shareholders, or that Plaintiffs, Mullen, or its shareholders suffered any damage

or were harmed as a result of any conduct alleged in the Consolidated Derivative

Action.  The Settling Defendants have further asserted and continue to assert that at

11

all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of Mullen and its shareholders.

Nonetheless, the Settling Defendants also have taken into account the expense, uncertainty, and risks inherent in any litigation, especially in complex cases like the Consolidated Derivative Action, and that the proposed Settlement would, among other things: (a) bring an end to the expenses, burdens, and uncertainties associated with the continued litigation of the claims asserted in the Consolidated Derivative Action; (b) finally put to rest those claims and the underlying Consolidated Derivative Action; and (c) confer benefits upon them, including further avoidance of disruption of their duties due to the pendency and defense of the Consolidated Derivative Action.   Therefore, the Settling Defendants have determined that it is desirable and beneficial that the Consolidated Derivative Action, and all of the Settling Parties' disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Pursuant to the terms set forth below, the Stipulation (including all of the Exhibits thereto) shall in no event be construed as or deemed to be evidence of an admission or concession by the Settling Defendants with respect to any claim of fault, liability, wrongdoing, or damage whatsoever.

## B.    Why Did Shareholders Agree to Settle?

Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the
Consolidated Derivative Action have merit.    However, Plaintiffs and Plaintiffs'
Counsel recognize and acknowledge the expense and length of continued
proceedings necessary to prosecute the Consolidated Derivative Action against the
Settling Defendants through trial(s) and potential appeal(s).  Plaintiffs and Plaintiffs'
Counsel also have considered the uncertain outcome and the risk of any litigation,
especially in complex actions such as the Consolidated Derivative Action, as well as
the difficulties and delays inherent in such litigation.    Plaintiffs and Plaintiffs'
Counsel also are mindful of the inherent problems of proof of, and possible defenses
to, the claims asserted in the Consolidated Derivative Action.    Based on their
evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set
forth in the Stipulation is in the best interests of Mullen and its shareholders.
Plaintiffs and Plaintiffs' Counsel believe that the implementation of the Corporate
Governance Enhancements will strengthen Mullen's operations and will provide
value to the Company and its shareholders.

## VI.    SETTLEMENT HEARING

On _____, 2024, at __:___ __.m., the Court will hold the
Settlement Hearing at the United States District Court for the Central District of
California, 350 West 1st Street, Los Angeles, California 90012, in Courtroom 8C.

At the Settlement Hearing, the Court will consider whether the terms of the Settlement are fair, reasonable, and adequate and thus should be finally approved, whether the Fee and Expense Application should be approved, and whether the Consolidated Derivative Action should be dismissed with prejudice pursuant to the Stipulation.

### VII.   RIGHT TO ATTEND SETTLEMENT HEARING

Any Mullen shareholder, as of the Record Date, may, but is not required to, appear in person at the Settlement Hearing.  If you want to be heard at the Settlement Hearing, then you must first comply with the procedures for objecting, which are set forth below.  The Court has the right to adjourn the date of the Settlement Hearing or modify any other dates without further notice.  The Court reserves the right to hold the Settlement Hearing telephonically, or by other virtual means.  Thus, if you are planning to attend the Settlement Hearing, you should confirm the date, time, and format before going to the Court.  Mullen shareholders as of the Record Date who have no objection to the Settlement do not need to appear at the Settlement Hearing or take any other action.

### VIII. RIGHT TO OBJECT TO THE PROPOSED DERIVATIVE SETTLEMENT AND PROCEDURES FOR DOING SO

Any Mullen shareholder as of the Record Date may appear and show cause, if he, she, or it has any reason why the Settlement of the Consolidated Derivative Action should not be approved as fair, reasonable, and adequate, or why a judgment

should not be entered thereon, or why requested attorneys' fees and expenses should

not be approved.  You must object in writing, and you may request to be heard at the

Settlement Hearing. If you choose to object, then you must follow these procedures.

### A.    <u>You Must Make Detailed Objections in Writing</u>

Any objections must be presented in writing and must contain the following

information:

1.    Your name, legal address, telephone number, and email (if applicable);

2.    The case name and number (*In re Mullen Automotive, Inc. Derivative
Litigation*, Case No. 2:22-cv-05336-DMG-AGR (C.D. Cal.));

3.    Proof of being a Mullen shareholder as of the Record Date,
_____;

4.    The date(s) you acquired your Mullen shares;

5.    A statement of each objection being made;

6.    Notice of whether you intend to appear at the Settlement Hearing (you
are not required to appear to have your objection considered by the Court); and

7.    Copies of any papers you intend to submit, along with the names of any
witness(es) you intend to call to testify at the Settlement Hearing and the subject(s)
of their testimony.

Only Mullen shareholders, as of the Record Date, who have mailed valid and

timely written notices of objection will be entitled to be heard at the Settlement

Hearing unless the Court orders otherwise.  The Court may not consider any objection that does not substantially comply with these requirements.

### B.    <u>You Must Timely Deliver Written Objections to Counsel</u>

Unless otherwise ordered by the Court, no Mullen shareholder, as of the Record Date, shall be heard or entitled to contest the approval of all or any of the terms and conditions of the Settlement, or, if approved, the District Court Approval Order and the Judgment to be entered thereon approving the same, unless that Person has, at least twenty-one (21) calendar days before the Settlement Hearing, mailed to Plaintiffs' Counsel and Defendants' Counsel appropriate proof of Mullen stock ownership, along with his, her, or its written objection, including the basis therefore, and all other information detailed herein.  All written objections and supporting papers must be mailed to Plaintiffs' Counsel and Defendants' Counsel as listed below:

<div align="center">Plaintiffs' Counsel:</div>

| | |
|---|---|
| **THE ROSEN LAW FIRM, P.A.** | **GAINEY McKENNA & EGLESTON** |
| Erica L. Stone, Esq. | Gregory M. Egleston, Esq. |
| 275 Madison Avenue, 40th Floor | 260 Madison Avenue, 22nd Floor |
| New York, NY 10016 | New York, NY 10016 |

<div align="center">— and —</div>

<div align="center">Defendants' Counsel:</div>

| | |
|---|---|
| **KING & SPALDING LLP** | **FOLEY & LARDNER LLP** |
| Brian P. Miller, Esq. | F. Phillip Hosp, Esq. |
| Southeast Financial Center | 555 South Flower Street, Suite 3300 |
| 200 S. Biscayne Boulevard, Suite 4700 | Los Angeles, CA  90071 |
| Miami, FL 33131 | |

An attorney hired by a shareholder for the purpose of objecting to the Settlement must file a notice of appearance with the Clerk of the Court no later than twenty-one (21) calendar days before the Settlement Hearing.

YOUR WRITTEN OBJECTIONS MUST BE POSTMARKED NO LATER THAN _____, 2024.

Unless the Court orders otherwise, your objection will not be considered unless it is timely submitted to Plaintiffs' Counsel and Defendants' Counsel.

Any Person who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object to any aspect of the Settlement as incorporated in the Stipulation or otherwise request to be heard (including the right to appeal) and will be forever barred from raising such objection or request to be heard in this or any other action or proceeding, and, unless otherwise ordered by the Court, shall be bound by the Judgment to be entered, and the releases to be given pursuant to Paragraph V.5 of the Stipulation.

## IX.    HOW TO OBTAIN ADDITIONAL INFORMATION

This Notice summarizes the Stipulation.  It is not a complete statement of the events of the Consolidated Derivative Action or the Settlement contained in the Stipulation.

You may inspect the Stipulation and other papers in the Consolidated Derivative Action at the United States District Clerk's office at any time during

regular business hours of each business day.  The Clerk's office is located at the

United States District Court for the Central District of California, 350 W. 1st Street,

Suite 4311, Los Angeles, CA 90012-4565.  However, you must appear in person to

inspect these documents.  The Clerk's office will not mail copies to you.  You may

also view and download the Stipulation via the Public Access to Court Electronic

Records (PACER) system at pacer.uscourts.gov.

If you have any questions about matters in this Notice, you may contact:

**THE ROSEN LAW FIRM, P.A.**  **GAINEY McKENNA & EGLESTON**
Erica L. Stone, Esq.  Gregory M. Egleston, Esq.
275 Madison Avenue, 40th Floor  260 Madison Avenue, 22nd Floor
New York, NY 10016  New York, NY 10016
Tel:  (212) 686-1060  Tel:  (212) 983-1300
Email: estone@rosenlegal.com  Email:  gegleston@gme-law.com

**PLEASE  DO  NOT  CALL,  WRITE,  OR  OTHERWISE  DIRECT QUESTIONS  TO  THE  COURT,  THE  CLERK'S  OFFICE,  OR DEFENDANTS' COUNSEL.**

IT IS SO ORDERED.

DATED: _____  BY ORDER OF THE
UNITED STATES DISTRICT
COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA

# EXHIBIT C

**EXHIBIT C**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. DERIVATIVE LITIGATION | Case No. 2:22-cv-05336-DMG-AGR |
| | Honorable Dolly M. Gee |
| | **NOTICE OF PROPOSED DERIVATIVE SETTLEMENT** |

**TO:   ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF THE
COMMON STOCK OF MULLEN AUTOMOTIVE INC. ("MULLEN"
OR THE "COMPANY") AS OF _____ (THE "RECORD
DATE")**

PLEASE TAKE NOTICE that the above-captioned consolidated shareholder

derivative action (the "Consolidated Derivative Action") is being settled on the

terms set forth in a Stipulation and Agreement of Settlement dated August 21, 2024

(the "Stipulation").[1]  Under the terms of the Stipulation, as part of the proposed

Settlement, Mullen will adopt certain corporate governance enhancements.  These

enhancements, which are detailed more fully in the Stipulation and Long-Form

---

[1] This notice should be read in conjunction with, and is qualified in its entirety by
reference to, the text of the Stipulation and its Exhibits, which have been filed with
the United States District Court for the Central District of California.  Capitalized
terms used in this notice not otherwise defined shall have the same meanings
ascribed to them in the Stipulation.

EXHIBIT C

Notice, are intended to address the claims asserted in the Consolidated Derivative Action.

The full Board reviewed the Settlement terms, and in a good faith exercise of its business judgment, approved the Settlement, finding it to be in the best interest of Mullen and its current shareholders. Mullen acknowledges that the corporate governance enhancements confer substantial benefits upon Mullen and its current shareholders.

Plaintiffs' Counsel intends to apply to the Court for an award of attorneys' fees and expenses not to exceed $500,000.00. Defendants have agreed not to oppose that request. The amount of attorneys' fees and expenses will be within the sole discretion of the Court.

**IF YOU WERE A RECORD OR BENEFICIAL OWNER OF MULLEN COMMON STOCK AS OF _____, PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY AS YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THE ABOVE-REFERENCED LITIGATION.**

On _____, 2024, at __:___ __.m., the Court will hold the Settlement Hearing at the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California 90012, in Courtroom 8C, before the Honorable Dolly Gee to determine whether: (i) the terms of the Settlement

**EXHIBIT C**

are fair, reasonable, and adequate and thus should be finally approved; (ii) the Fee
and Expense Application should be approved; and (iii) the Consolidated Derivative
Action should be dismissed with prejudice pursuant to the Stipulation. The Court
has the right to hold the Settlement Hearing telephonically or by other virtual means.

Any Mullen shareholder that objects to the Settlement shall have a right to
appear and to be heard at the Settlement Hearing, provided that he, she, or it was a
shareholder of record or beneficial owner as of the Record Date. Any Mullen
shareholder who satisfies this requirement may enter an appearance through counsel
of such shareholder's own choosing and at such shareholder's own expense, or may
appear on their own. However, no shareholder of Mullen shall be heard at the
Settlement Hearing unless, no later than twenty-one (21) calendar days before the
Settlement Hearing, such shareholder has mailed to Plaintiffs' Counsel and
Defendants' Counsel a written notice of objection containing the following
information:

1.    Your name, legal address, telephone number, and email (if applicable);

2.    The case name and number (*In re Mullen Automotive, Inc. Derivative
Litigation*, Case No. 2:22-cv-05336-DMG-AGR (C.D. Cal.));

3.    Proof of being a Mullen shareholder as of the Record Date,
_____;

4.    The date(s) you acquired your Mullen shares;

**EXHIBIT C**

5.      A statement of each objection being made;

6.      Notice of whether you intend to appear at the Settlement Hearing (you are not required to appear to have your objection considered by the Court); and

7.      Copies of any papers you intend to submit, along with the names of any witness(es) you intend to call to testify at the Settlement Hearing and the subject(s) of their testimony.

Only shareholders who have mailed valid and timely written notices of objection will be entitled to be heard at the Settlement Hearing unless the Court orders otherwise. The Court may not consider any objection that does not substantially comply with these requirements.

Any Person who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object to any aspect of the Settlement as incorporated in the Stipulation or otherwise request to be heard (including the right to appeal) and will be forever barred from raising such objection or request to be heard in this or any other action or proceeding, and, unless otherwise ordered by the Court, shall be bound by the Judgment to be entered and the releases to be given pursuant to the Stipulation.

EXHIBIT C

If you have any questions about matters in this Notice, you may contact:

**THE ROSEN LAW FIRM, P.A.**
Erica L. Stone, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel:  (212) 686-1060
Email: estone@rosenlegal.com

**GAINEY McKENNA & EGLESTON**
Gregory M. Egleston, Esq.
260 Madison Avenue, 22nd Floor
New York, NY 10016
Tel:  (212) 983-1300
Email:  gegleston@gme-law.com

**PLEASE DO NOT CONTACT THE COURT, CLERK'S OFFICE, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

IT IS SO ORDERED.

DATED: _____

BY ORDER OF THE
UNITED STATES DISTRICT
COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA

# EXHIBIT D

**EXHIBIT D**

1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. DERIVATIVE LITIGATION | Case No. 2:22-cv-05336-DMG-AGR |
| | Honorable Dolly M. Gee |
| | **[PROPOSED] ORDER APPROVING FINAL SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION** |

A hearing having been held before this Court on _____, 2024, pursuant to the Court's order of _____, 2024 (the "Preliminary Approval Order"), upon the Stipulation and Agreement of Settlement dated August 21, 2024 ("Stipulation"), entered into between and among the Settling Parties,[1] which is incorporated by reference; it appearing that due notice of the hearing has been given to all Mullen shareholders in accordance with the Preliminary Approval Order; the Settling Parties having appeared through their respective counsel of record; the Court having heard and considered evidence in support of the proposed Settlement; the counsel for the Settling Parties having been heard; an opportunity to be heard having been given to all other persons requesting to be heard in accordance with the Preliminary Approval Order; the Court having determined that notice to all Mullen shareholders was adequate and sufficient; and the entire matter of the proposed Settlement having been heard and considered by the Court;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1.    The Court has jurisdiction over the subject matter of the Consolidated Derivative Action, and all matters relating to the Settlement of the Consolidated Derivative Action, as well as personal jurisdiction over the Settling Parties and all Mullen shareholders, and it is further determined that Plaintiffs, the Settling Defendants, the Company, and all Mullen shareholders, as well as their respective heirs, executors, successors, and assigns, are bound by this Order.

2.    Notice has been given to all Mullen shareholders, pursuant to and in the manner directed by the Preliminary Approval Order, proof of dissemination of the Settlement Notice has been filed with the Court, and full opportunity to be heard has been offered to all Settling Parties and to all other Persons with an interest in matters relating to the Settlement.  The form and manner of the Settlement Notice is hereby

---

[1]    All capitalized terms contained herein not otherwise defined shall have the meanings as set forth in the Stipulation.

determined to have provided due and sufficient notice of the Settlement and to have been given in full compliance with the requirements of Federal Rule of Civil Procedure ("Rule") 23.1 and due process.

3.      Based on the record before the Court, each of the provisions of Rule 23.1 has been satisfied and the Consolidated Derivative Action has been properly maintained according to the provisions of Rule 23.1.

4.      The Settlement is found to be fair, reasonable, adequate, and in the best interests of Mullen and all Mullen shareholders and is hereby approved pursuant to Rule 23.1.  The Settling Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions.

5.      This Consolidated Derivative Action is hereby dismissed <u>with prejudice</u>, and the Clerk is directed to enter and docket the Judgment in the form attached as Exhibit E to the Stipulation.

6.      The parties in the Consolidated Derivative Action shall bear their own fees, costs, and expenses, except as provided in the Stipulation.  The Court finds that the Fee and Expense Amount of $_____ is fair and reasonable, in accordance with the Stipulation, and finally approves the Fee and Expense Application, with any interest that may have accrued in the Escrow Account.  The Court finds that the Service Awards to Plaintiffs in the amount of $_____ each, or $_____ in total, are fair and reasonable, in accordance with the Stipulation, and finally approves the Service Awards, which shall be funded from Plaintiffs' Counsel's Fee and Expense Amount.

7.      The Court finds that, during the course of the litigation, the parties to the Consolidated Derivative Action and their respective counsel at all times complied with the requirements of Rule 11 and all other similar laws relating to the institution, prosecution, defense, or settlement of the Consolidated Derivative Action.

[PROPOSED] ORDER APPROVING FINAL SETTLEMENT OF
CONSOLIDATED DERIVATIVE ACTION

8.      Upon the Effective Date, Plaintiffs and Mullen, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed with prejudice each and every one of the Released Claims against the Released Persons.  For the avoidance of doubt, this shall not release any insurance claims the Settling Defendants or Mullen have against any of their insurers in connection with the Settlement or the Released Claims.

9.      Upon the Effective Date, Plaintiffs (acting individually on their own behalf and on behalf of their spouses, heirs, executors, administrators, personal representatives, agents, representatives, attorneys, and assigns, and acting derivatively on behalf of Mullen and its shareholders), and Mullen, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be forever barred and enjoined from commencing, instituting, or prosecuting any of the Released Claims against any of the Released Persons.  For the avoidance of doubt, this shall not bar or enjoin any insurance claims the Settling Defendants or Mullen have against any of their insurers in connection with the Settlement or the Released Claims.  Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation, or the rights of the Settling Defendants or Mullen to seek insurance coverage for the Settlement or the Released Claims.

10.      Upon the Effective Date, each of the Released Persons, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged Plaintiffs and Plaintiffs' Counsel and all current Mullen shareholders (solely in their capacity as Mullen shareholders) from any and

all manner of claims, known or unknown, whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule, regulation, ordinance, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, arising out of the commencement, litigation, or settlement of the Consolidated Derivative Action. Nothing herein shall in any way impair or restrict the rights of the Released Persons to enforce the terms of this Stipulation, any final order and judgment issued by the Court, or any other document memorializing the Settlement of the Consolidated Derivative Action. Furthermore, nothing herein shall in any way impair or restrict the rights of the Settling Defendants or Mullen to seek insurance coverage for the Settlement or the Released Claims.

11.    Neither this Order, the Judgment, nor the Stipulation or their negotiation, nor any proceedings taken pursuant thereto shall be deemed or argued to be evidence of or to constitute an admission or concession by the Settling Defendants or the Company, except to enforce the terms of the Settlement, or to seek insurance coverage for the Settlement or the Released Claims.

12.    In the event that the Settlement is terminated pursuant to the terms of the Stipulation or if any of the conditions in ¶ V.7.1 of the Stipulation do not occur for any reason, then (i) the Settlement and the Stipulation shall be canceled and terminated; (ii) this Order and the Judgment and any related orders entered by the Court shall in all events be treated as vacated, *nunc pro tunc*; (iii) the release of the Released Claims provided for in this Order and the Judgment shall be null and void; (iv) the fact of the Settlement shall not be admissible in any proceeding before any court or tribunal; (v) all proceedings in, and parties to, the Consolidated Derivative Action shall revert to their status and respective positions that existed on June 2, 2024, and no materials created by or received from another party that were used in, obtained during, or related to Settlement discussions shall be admissible for any

1  purpose in any court or tribunal, or used, absent consent from the disclosing party,

2  for any other purpose or in any other capacity, except to the extent that such materials

3  are required to be produced during discovery in the Consolidated Derivative Action

4  or in any other litigation; and (vi) the Settling Parties shall proceed in all respects as

5  if the Stipulation had not been entered into by the Settling Parties.

6          13.     No proceedings or Court order, including but not limited to the portion

7  of this Order or any other order relating to the Fee and Expense Amount and Service

8  Awards, shall in any way disturb or affect this Order and the Judgment being treated

9  as Final approval of the Settlement or the Settlement otherwise being entitled to

10  preclusive effect upon the satisfaction of the conditions in ¶ V.7.1 of the Stipulation,

11  and any such proceedings or Court order shall be considered separate from this Order

12  and the Judgment.  The binding effect of this Order and the Judgment shall not be

13  conditioned upon or subject to the resolution of any appeal or other proceedings that

14  relate solely to the issue of the Fee and Expense Amount or the Service Awards.

15

16  IT IS SO ORDERED.

17  DATED: _____        _____

18                                                          THE HONORABLE DOLLY M. GEE
                                                            UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

**EXHIBIT E**

1

2

3

4

5

6

7

8

9      **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA**

11

12   IN RE MULLEN AUTOMOTIVE, INC.        Case No. 2:22-cv-05336-DMG-AGR
     DERIVATIVE LITIGATION
13                                          Honorable Dolly M. Gee

14
                                            **[PROPOSED] FINAL JUDGMENT**
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiffs, having moved for final approval of the Settlement set forth in the

2  Stipulation and Agreement of Settlement dated August 21, 2024, and the matter

3  having come before the Honorable Dolly M. Gee, United States District Judge, and

4  the Court having issued its Order Approving Final Settlement of Consolidated

5  Derivative Action on _____, 2024 (the "District Court

6  Approval Order"), dismissing the Consolidated Derivative Action with prejudice and

7  directing the Clerk of the Court to enter this Judgment,

8    **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

9    1.    This Judgment incorporates by reference the District Court Approval

10  Order; and

11    2.    For the reasons stated in, and pursuant to the terms set forth in, the

12  District Court Approval Order, Plaintiffs' Motion for Final Approval of Derivative

13  Settlement is granted; accordingly, this case is closed.

14

15  Dated:_____        BY:_____

16                                        Clerk of Court

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL JUDGMENT