Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. DERIVATIVE LITIGATION | Lead Case No. 2:22-cv-05336-DMG-(AGRx) |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION** |
| This Document Relates to:<br><br>ALL ACTIONS | |
| | Date: October 11, 2024<br>Time: 9:30 a.m.<br>Courtroom: 8C, 8th Floor<br>Judge: Honorable Dolly M. Gee |

# TABLE OF CONTENTS

I.    INTRODUCTION........................................................................................1

II.   FACTUAL BACKGROUND ....................................................................3

III.  PROCEDURAL BACKGROUND.............................................................4

   A.   This Consolidated Derivative Action, Stip., §I.A. ..........................4

   B.   Settlement Negotiations, Stip., §I.C. ..............................................5

IV.   TERMS OF THE PROPOSED SETTLEMENT ......................................6

V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL ......9

   A.   Legal Standards For Preliminary Approval .....................................9

   B.   The Settlement Satisfies the Standards for Preliminary Approval ..................10

      1.   The Settlement Confers Substantial Benefits Upon Mullen and its Shareholders ..........................11

      2.   Strength of Plaintiffs' Case and the Costs and Risks of Further Litigation .................................12

      3.   The Proposed Settlement is a Product of Informed, Arm's Length Negotiations ........................15

VI.   NOTICE SATISFIES RULE 23.1(c) AND DUE PROCESS ...........19

VII.  PROPOSED SCHEDULE OF EVENTS.................................................21

VIII. CONCLUSION.........................................................................................22

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

## <u>Cases</u>

4

5

*Allred v. Walker*,
  U.S. Dist. LEXIS 236249 (S.D.N.Y. Dec. 9, 2021) ...................................20

6

7

*Amans v. Tesla, Inc.*,
  2024 U.S. Dist. LEXIS 41222 (N.D. Cal. Mar. 8. 2024) .........................16

8

9

*Arace v. Thompson*,
  2011 WL 3627716 (S.D.N.Y. Aug. 17, 2011).........................................20

10

11

*Basaraba v. Greenberg*,
  2014 WL 12591677 (C.D. Cal. Nov. 10, 2014) ...................................9, 12

12

13

*Booth v. Strategic Realty Trust Inc.*,
  2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 28, 2015)..........................9

14

15

*Brooks v. Am. Exp. Indus., Inc.*,
  1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .......................18

16

17

*Carter v. San Pasqual Fiduciary Tr. Co.*,
  2018 WL 6174767 (C.D. Cal. Feb. 28, 2018) .........................................15

18

19

*Clark v. Ecolab Inc.*,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) .........................................16

20

21

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ......................................................6

22

23

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ..................................................................14

24

25

*Griffin v. Consol. Commc'ns*,
  2023 U.S. Dist. LEXIS 98743 (E.D. Cal. Jun. 5, 2023).........................19

26

27

28

ii

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 10, 12

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
    2010 WL 4027632 (S.D. Cal. Oct. 14, 2010) ........................................ 16

*In re AOL Time Warner S'holder Derivative Litig.*,
    2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ................................... 6, 14, 15

*In re Apollo Grp., Inc. Sec. Litig.*,
    2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ........................................ 14

*In re Apple Computer, Inc. Derivative Litig.*,
    2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ...................... 11

*In re Banc of California, Inc. Stockholder Derivative Litigation*,
    Case No. 8:19-cv-00621-DMG-DFM (C.D. Cal.) ................................... 20

*In re Ceradyne, Inc.*,
    2009 WL 10671494 (C.D. Cal. June 9, 2009) ................................... 10, 11

*In re Fab Universal*,
    148 F. Supp. 3d 277 (S.D.N.Y. Nov. 17, 2015) ........................................ 13

*In re First Cap. Holdings Corp. Fin. Prod. Sec. Litig.*,
    1992 WL 226321 (C.D. Cal. June 10, 1992) ........................................ 16

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
    2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ................................... 10, 22

*In re Lloyd's Am. Tr. Fund Litig.*,
    2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ...................... 14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................ 10

*In re MRV Commc'ns, Inc. Derivative Litig.*,
    2013 WL 12210256 (C.D. Cal. Apr. 8, 2013) ........................................ 22

iii

*In re MRV Commc'ns, Inc. Derivative Litig.*,
    2013 WL 2897874 (C.D. Cal. June 6, 2013) ......................................................9, 20

*In re NVIDIA Corp. Derivative Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)............................................*passim*

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 13

*In re OSI Sys., Inc. Derivative Litig.*,
    2017 WL 5642304 (C.D. Cal. May 2, 2017) ......................................... 10, 13

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................... 13, 16

*In re Pinterest Derivative Litig.*,
    2022 WL 484961 (N.D. Cal. Feb. 16, 2022) ...........................................10, 12

*In re PMC-Sierra, Inc. Deriv. Litig.*,
    2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010).......................... 20

*In re Rambus Inc. Derivative Litig.*,
    2009 WL 166689 (N.D. Cal. Jan. 20, 2009).........................................12, 20

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................... 10

*In re Walt Disney Co. Derivative Litig.*,
    907 A.2d 693 (Del. Ch. 2005) .................................................................. 13

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
    2019 U.S. Dist. LEXIS 240004 (N.D. Cal. May 14, 2019)...................... 12

*Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*,
    2024 WL 477221 (E.D. Cal. Feb. 7, 2024) .............................................. 15

*Kamen v. Kemper Fin. Servs. Inc.*,
    500 U.S. 90 (1991)...................................................................................... 13

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ............................................................... 10

*Lloyd v. Gupta*,
   2016 U.S. Dist. LEXIS 96166 (N.D. Cal. Jul. 22, 2016) ....................... 19

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375, (1970) ............................................................................. 11

*Mohammed v. Ells*, C.A.,
   2014 U.S. Dist. LEXIS 118796 (D. Colo. Aug. 26, 2014) ...................... 6

*Moore v. Verb Tech. Co., Inc.*,
   2021 WL 11732976 (C.D. Cal. Mar. 1, 2021) ................................. 11, 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) .............................................................................. 19

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
   797 F.2d 799 (9th Cir. 1996) ................................................................. 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 9

*Officers for Just. v. Civ. Serv. Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ........................................................... 9, 10

*Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*,
   2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) ......................................... 17

*Roberti v. OSI Sys, Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ........................................ 16

*Sheikh v. Tesla, Inc.*,
   2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ........................................ 14

*Van Der Gracht Rommerswael v. Auerbach*,
   2018 U.S. Dist. LEXIS 224500 (C.D. Cal. Nov. 5, 2019) ..................... 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION; Case No. 2:22-cv-05336-DMG-(AGRx)

*Villanueva v. Morpho Detection, Inc*,
    2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ........................................................ 16

*Zapata Corp. v. Maldonado*,
    430 A.2d 779 (Del. 1981) ....................................................................................... 18

## **Statutes**

8 *Del. C.* a(b)(7) ........................................................................................................... 13

## **Rules**

Fed. R. Civ. P. 23.1 ..............................................................................................*passim*

Pursuant to Fed. R. Civ. P. 23.1(c) and the Stipulation and Agreement of Settlement, dated August 21, 2024 (the "Stipulation" or "Stip."),[1] Plaintiffs Jeff Witt, Joseph Birbigalia, and Hany Morsy (collectively, "Plaintiffs") in the above-captioned shareholder derivative action (the "Consolidated Derivative Action" or "Action") brought on behalf of Nominal Defendant Mullen Automotive Inc. ("Mullen" or the "Company"), respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Approval of Settlement of Consolidated Derivative Action (the "Motion").

## I.    **INTRODUCTION**

Plaintiffs are pleased to present this Motion for preliminary approval of the proposed shareholder derivative Settlement. The Settlement is the culmination of extensive, arm's-length negotiations by experienced and well-informed counsel on both sides under the supervision of experienced mediator Robert A. Meyer, Esq. of JAMS (the "Mediator"). Stip., §I(C). As set forth in the Stipulation, the Settlement fully and finally resolves all the claims asserted in this Action as well as other actions pending in other courts. *Id.* at 1, ¶¶V.5.1, V.8.4.[2]

Pursuant to the Settlement's terms, Mullen has agreed to implement and adopt comprehensive reforms to its corporate governance processes and procedures that will strengthen the Company's operations (the "Corporate Governance Enhancements"). The detailed Corporate Governance Enhancements, attached as Exhibit 1 to the Stipulation, are tailored to address the wrongdoing asserted in the Action, greatly reducing the chance of Mullen suffering future legal exposure from similar misconduct

---

[1] Unless otherwise noted, all capitalized terms herein shall have the same meaning as set forth in the Stipulation submitted herewith.

[2] Two other derivative cases were filed after the Consolidated Derivative Action: *Coleman v. Michery, et al.*, Case No. 2023-1228-KJSM (Del. Ch.), filed on December 8, 2023 (the "*Coleman* Action"); and *Martis v. Michery, et al.*, Case No. 2:24-cv-02908-BRM-AME (D.N.J.), filed on March 14, 2024 (the "*Martis* Action"). The *Martis* Action was voluntarily dismissed on June 13, 2024. Stip., §I(D).

alleged in the Action. The Corporate Governance Enhancements include, *inter alia*: the establishment of a new Risk Committee (Stip., ¶V.3.2); the creation of a Disclosure Committee (*Id.*, ¶3.3); improvements to the Nominating and Corporate Governance Committee Charter (*Id.*, ¶3.5; Ex. 4); improvements to the Compensation Committee Charter (*Id.*, ¶3.6; Ex. 5); improved director education (*Id.*, ¶ 3.8); improved board composition and practices (*Id.*, ¶3.9; Ex. 6); and the formalization of a Whistleblower Policy (*Id.*, ¶3.10; Ex. 7).

Mullen's Board of Directors (the "Board"), in exercising its good faith business judgment, determined that "the Settlement and each of its terms are fair, reasonable, and in the best interest of Mullen and its current shareholders." *Id*., ¶2.2. Moreover, Mullen "acknowledges that the Corporate Governance Enhancements … confer substantial benefits on Mullen and its current shareholders" (*id*., §IV) and that Plaintiffs' efforts of "the filing, pendency, and settlement of the Consolidated Derivative Action caused the adoption and implementation of the Corporate Governance Enhancements," (*Id*., ¶2.2), and "that it is desirable and beneficial that the Consolidated Derivative Action, and all of the Settling Parties' disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation." *Id*., §III.

Accordingly, in recognition of the substantial, valuable benefits conferred upon Mullen, the Stipulation provides that Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel (the "Fee and Expense Amount") in the amount of $500,000, Stip., ¶V.6.1, an amount to which Mullen does not object. *Id*., ¶6.2. Once the Corporate Governance Enhancements were agreed-upon and documented, Plaintiffs and Mullen continued negotiations overseen by Mr. Meyer, eventually accepting a Mediator's proposal for the Fee and Expense Amount. Declaration of Gregory M. Egleston ("Egleston Decl."), filed herewith, ¶20. Plaintiffs also seek Service Awards in the amount of $2,000 each, or $6,000 in total, which will be funded from the Fee and Expense Award, if the Court

1    grants these requests. *Id.*, ¶27.

2         At the preliminary approval stage, the Court need only conclude that a proposed

3    derivative settlement is within the range of resolutions that might ultimately be found

4    to be fair, reasonable, and adequate, such that notice of the Settlement should be

5    provided to current Mullen shareholders and a settlement hearing should be scheduled

6    to consider final approval of the Settlement. Plaintiffs respectfully submit that the

7    Settlement meets this standard. Accordingly, Plaintiffs respectfully request that the

8    Court enter the [Proposed] Preliminary Approval Order (Exhibit A to the Stipulation,

9    and separately submitted concurrently herewith) that grants preliminary approval of

10   the proposed Settlement, directs that notice be given to current Mullen Shareholders,

11   and schedules a hearing on final settlement approval (the "Preliminary Approval

12   Order"). Mullen and the Settling Defendants[3] do not oppose this Motion or any of the

13   requested relief.

14   **II.    FACTUAL BACKGROUND**

15        Mullen is an automotive company that produces electric vehicles ("EVs").

16   Mullen is the result of a merger of Mullen Technologies, Inc. with Net Element, Inc.

17   Plaintiffs assert that between June 15, 2020 and April 6, 2022, the Settling Defendants

18   breached their fiduciary duties and violated the Securities Exchange Act of 1934

19   ("Exchange Act") causing Mullen to issue false and misleading statements including

20   in press releases, interviews, and a proxy statement filed with the U.S. Securities and

21   Exchange Commission ("SEC"). Egleston Decl., ¶7. Specifically, the Consolidated

22   Derivative Action concerns the Settling Defendants' purported issuance of a series of

23   false and misleading statements concerning Mullen's business prospects. In particular,

24   Plaintiffs assert that the Settling Defendants allegedly misrepresented Mullen's: (1)

25   ability and timeline to produce and sell electric cars; (2) manufacturing facilities and

26

27   [3] The "Settling Defendants" refers to David Michery, Ignacio Novoa, Mary Winter,
     Kent Puckett, Mark Betor, William Miltner, Jonathan New, and Jerry Alban (the
28   "Individual Mullen Settling Defendants"), together with Oleg Firer.

capabilities; (3) battery technology development and capabilities; and (4) strategic partnerships and/or deals with third-parties and customer contracts. *Id*., ¶8.

Plaintiffs allege that the truth emerged on April 6, 2022 when market analyst Hindenburg Research published a report detailing several issues with Mullen's operations and prospects. Hindenburg Research's report asserted, among other things, that: Mullen was unable to manufacture EVs in contrast to its previous representations; Mullen would not meet its stated technology goals including its battery technology; and customer agreements were no longer in effect. As a result of the Settling Defendants' alleged wrongdoing, Plaintiffs allege that Mullen was damaged. *Id*., ¶9.

Among other damages to Mullen, Plaintiffs allege that the Settling Defendants' misconduct exposed Mullen to liability in the federal securities class action, captioned *In re Mullen Automotive, Inc. Securities Litigation*, Case No. 2:22-cv-03026-DMG-AGR (C.D. Cal.) (the "Securities Class Action"). The Securities Class Action settled for $7,250,000 and the preliminary approval motion is pending.

Defendants deny all of Plaintiffs' allegations and any alleged wrongdoing. Stip., §III.

## III.  **PROCEDURAL BACKGROUND**

### A.  **This Consolidated Derivative Action, Stip., §I.A.**

On August 1, 2022, Plaintiffs Witt and Birbigalia filed the action *Witt, et al., v. Michery et. al.*, Case No. 2:22-cv-05336-DMG-AGR (C.D. Cal.) (the "*Witt* Action") on behalf of Mullen asserting claims against the Settling Defendants for breach of fiduciary duties, unjust enrichment, abuse of control, and waste of corporate assets, and asserting a claim against Defendant Firer for violations of §14 of the Exchange Act. On September 30, 2024, Plaintiff Morsy filed the action *Morsy v. Michery et. al.*, Case No. 2:22-cv-07139-DMG-AGR (C.D. Cal.) (the "*Morsy* Action"), asserting similar claims as in the *Witt* Action. Both the *Witt* Action and the *Morsy* Action allege that the Settling Defendants are liable to Mullen for purportedly permitting the issuance of a series of false and misleading statements, beginning on June 15, 2020, concerning

4

1   Mullen's business prospects, as detailed *supra*.

2       On November 8, 2022, the Court consolidated the *Witt* Action with the *Morsy*

3   Action and appointed Gainey McKenna & Egleston and The Rosen Law Firm, P.A. as

4   Co-Lead Counsel for the Plaintiffs. ECF No. 11. Shortly thereafter, Plaintiffs and the

5   Individual Mullen Settling Defendants filed a Joint Stipulation to Stay Derivative

6   Litigation. ECF No. 13. The Court's Order Staying Derivative Litigation was entered

7   on November 30, 2022 ("Order Staying Derivative Action"). ECF No. 15.

8       Pursuant to the Order Staying Derivative Action, in November 2023, Mullen

9   produced internal Company documents to Plaintiffs. Egleston Decl., ¶22. Prior to

10  agreeing to the Settlement, Plaintiffs were in the process of preparing a consolidated

11  amended complaint to incorporate these documents. *Id.*

12  **B.    Settlement Negotiations, Stip., §I.C.**

13      Plaintiffs were invited to, and did, attend a mediation session on April 2, 2024

14  that was also held in connection with the Securities Class Action. Prior to this in-person

15  mediation session with Mr. Meyer, on March 13, 2024, Plaintiffs sent a written

16  settlement demand to explore a potential resolution of the Action. Egleston Decl., ¶¶16-

17  17. Over the next several months, with the Mediator's assistance, the Parties engaged

18  in extensive arm's-length negotiations during a virtual mediation session, additional

19  videoconferences, and emails that included several exchanges of drafts of corporate

20  governance reforms. *Id.*, ¶17. Ultimately, following lengthy, arm's-length negotiations,

21  on June 3, 2024, the Settling Parties reached an agreement-in-principle to settle the

22  Action and executed a term sheet whereby Mullen agreed to adopt the Corporate

23  Governance Enhancements subject to execution of a formal, final stipulation and

24  agreement of settlement and related papers, and Court approval. *Id.*, ¶18.

25      After the term sheet was executed regarding the material, substantive terms of

26  the Settlement, the Parties began negotiating attorneys' fees and expenses

27  commensurate with the value of the Settlement benefits and the contributions of

28

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION; Case No. 2:22-cv-05336-DMG-(AGRx)

1  Plaintiffs' Counsel to the Settlement.[4] *Id.*, ¶20. Similarly, Mr. Meyer, who was familiar
2  with the complexity of the issues, risks, and challenges confronted by Plaintiffs, as well
3  as the Plaintiffs' Counsel's efforts in securing the Settlement benefits, oversaw these
4  negotiations. After many discussions, the Parties accepted Mr. Meyer's mediator's
5  proposal for the Fee and Expense Amount. *Id.*

6  **IV.  TERMS OF THE PROPOSED SETTLEMENT**

7      If approved, the Settlement guarantees the adoption, implementation, and
8  maintenance of a comprehensive set of Corporate Governance Enhancements. These
9  reforms are designed to: address Plaintiffs' allegations in the Action; reduce the
10 likelihood that the same or similar alleged wrongdoing will recur; and overall
11 strengthen Mullen's corporate governance, oversight, and internal controls. Stip.,
12 ¶¶V.2-3; Ex. 1. Mullen has agreed to maintain the Corporate Governance
13 Enhancements for at least four (4) years after the Judgment becomes Final – sufficient
14 time for the Corporate Governance Enhancements to become embedded in Mullen's
15 policies, practices, and corporate culture. *See* Stip., Ex. 1.[5]

16

17 [4] Specially appearing defendant Firer has not appeared in the Action and, in executing
18 the Settlement, he expressly reserved all rights, including the right to issuance or formal
19 service of process in this Action or any proceeding, and any other rights at law and
20 equity to object to jurisdiction or venue.

21 [5] A minimum of four years is reasonable as courts routinely approve the same or shorter
22 minimum terms. *See e.g., Cohn v. Nelson*, 375 F. Supp. 2d 844, 850 (E.D. Mo. 2005)
23 (corporate governance measures in place for no less than three years will "provide
   meaningful ways of avoiding the problems [the company] experienced in the recent
24 past"); *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *2
25 (S.D.N.Y. Sept. 6, 2006) (corporate governance reforms to last "at least four years from
   the effective date of the Settlement."); *Mohammed v. Ells*, C.A. 2014 U.S. Dist. LEXIS
26 118796, at *8 (D. Colo. Aug. 26, 2014) (corporate governance reforms "must remain
27 in place for at least three years."); *In re NVIDIA Corp. Derivative Litig.*, 2008 WL
   5382544, at *1 (N.D. Cal. Dec. 22, 2008) (corporate governance policies "will remain
28 in effect for a period of three years following the Settlement Date or through the end
   of [the company's] fiscal year 2012, whichever is later.").

The Corporate Governance Enhancements provide for, among other things:

- <u>Establishment of a new Risk Committee (Stip., ¶V.3.2, Ex. 1 at 1-2)</u> – Mullen will create a Board-level Risk Committee that will be tasked with overseeing the Company's risk management policies and framework. This includes monitoring Mullen's compliance with public reporting requirements and conducting internal risk assessment and internal reporting. This new committee will have at least three independent members. Attached as Exhibit 2 to the Stipulation is the Risk Committee's formal charter that Mullen will adopt and post to its website. The Risk Committee charter details the responsibilities and authority of the Risk Committee.

- <u>Creation of a Disclosure Committee (Stip., ¶V.3.3, Ex. 1 at 2-3)</u> - Mullen will create a separate, management-level Disclosure Committee that will establish procedures and protocols relating to financial disclosures. The Disclosure Committee will ensure that all of Mullen's significant public statements, including SEC filings, material press releases, and Mullen's significant statements to non-Mullen individuals at public or private meetings, are reviewed for accuracy, integrity, and completeness, and for reviewing with management its ongoing compliance with these protocols and procedures. The Disclosure Committee members shall consist of, at least, Mullen's Chief Executive Officer, Chief Financial Officer, legal counsel, and at least one other senior officer with day-to-day oversight of the key functional areas of Mullen. Attached as Exhibit 3 to the Stipulation is the Disclosure Committee's formal charter that Mullen will adopt and post to its website.

- <u>Audit Committee's Company Assessment (Stip., ¶V.3.4, Ex. 1 at 3)</u> – The Audit Committee will perform a one-time internal assessment of internal controls in consultation with Mullen's outside auditors.

- <u>Improvements to the Nominating and Corporate Governance Committee Charter (Stip., ¶V.3.5, Ex. 1 at 3)</u> – Mullen will amend the Nominating and Corporate Governance Committee Charter which is attached as Exhibit 4 to the Stipulation. These improvements include requiring the committee to meet with each new prospective

7

Board member prior to the individual's nomination and determine whether to recommend the individual for membership to the Board. In addition to developing and recommending Corporate Governance Guidelines to the Board, the committee will ensure that these guidelines, and any amendments, are promptly made available to the public.

- <u>Improvements to the Compensation Committee Charter (Stip., ¶V.3.6; Ex. 1 at 3)</u> – Mullen will amend the Compensation Committee Charter which is attached as Exhibit 5 to the Stipulation. These modifications include the committee taking into account an executive officer's performance, relating to both legal compliance and compliance with Mullen's policies and procedures, when determining compensation arrangements. When determining benefits and/or separation pay to a terminated executive officer, the committee will take into consideration the circumstances of the departure and the executive's performance, relating to both legal compliance and compliance with Mullen's policies and procedures.

- <u>Regular Executive Reports (Stip., ¶V.3.7, Ex. 1 at 4)</u> – All Mullen executives subject to the reporting requirements of Section 16 of the Exchange Act shall provide reports (either oral or written at the Board's discretion) regarding their respective areas of responsibility at all regularly scheduled quarterly Board meetings.

- <u>Improved Director Education (Stip., ¶V.3.8, Ex. 1 at 4)</u> – Currently, Mullen's Corporate Governance Guidelines provide orientation programs for new directors that are designed to familiarize them with Mullen's business and strategy. The Company will bolster this program by requiring that all existing and new outside directors attend a National Associate of Corporate Directors certified training program, or similar program, within one year of (a) entry of Final Judgment in this Consolidated Derivative Action, or (b) a new director joining the Board.

- <u>Board Composition and Practices (Stip., ¶V.3.9, Ex. 1 at 4)</u> – Mullen will amend its Corporate Governance Guidelines which are attached as Exhibit 6 to the Stipulation. The updated guidelines will limit independent directors from sitting on

1  more than two additional public company board of directors.

2       •    Formalization of a Whistleblower Policy (Stip., ¶V.3.10, Ex. 1 at 4-5) –

3  Currently, Mullen's Code of Conduct states that the Company maintains "Whistle-

4  Blower Policy and Procedures," but the policy is not publicly available and has yet

5  been formally adopted. Accordingly, attached as Exhibit 7 to the Stipulation is the

6  formal Whistleblower Policy that will be posted on the Company's website and

7  provided to all current and new employees.

8  **V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

9      **A.   Legal Standards For Preliminary Approval**

10      Public policy strongly favors settlement as a method of resolving litigation

11  including complex litigation such as shareholder derivative actions. *Officers for Just.*

12  *v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing

13  that the "settlement process [is] favored in the law"); *MWS Wire Indus., Inc. v. Cal.*

14  *Fine Wire Co*., 797 F.2d 799, 802 (9th Cir. 1996) ("There is an overriding public

15  interest in settling and quieting litigation."). "Because shareholder derivative actions

16  are 'notoriously difficult and unpredictable ... settlements are favored.'" *NVIDIA*, 2008

17  WL 5382544, at *2.

18      Rule 23.1 provides that a shareholder derivative action "shall not be dismissed

19  or compromised without the approval of the court." Fed. R. Civ. P. 23.1(c). "In such

20  cases, courts in this Circuit have generally used the two-step approval process

21  employed in class actions." *Basaraba v. Greenberg*, 2014 WL 12591677, at *2 (C.D.

22  Cal. Nov. 10, 2014); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874,

23  at *2 (C.D. Cal. June 6, 2013). As such, a court first must determine whether the

24  proposed settlement merits preliminary approval. *Nat'l Rural Telecomms. Coop. v.*

25  *DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given, a

26  court must determine whether final approval is warranted. *Id*.

27      During the preliminary approval stage, courts "determine whether the settlement

28  falls 'within the range of possible approval.'" *Booth v. Strategic Realty Trust Inc*., 2015

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION; Case No. 2:22-cv-05336-DMG-(AGRx)

U.S. Dist. LEXIS 84143, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Thus, the Court's review at preliminary approval is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The "principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Ceradyne, Inc.*, 2009 WL 10671494, at *2 (C.D. Cal. June 9, 2009) (quotation omitted); *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5642304, at *2 (C.D. Cal. May 2, 2017). Courts may also consider "a variety of factors as the particular facts of a case demand[,]" including the: (i) amount offered in settlement; (ii) strength of plaintiff's case; (iii) stage of the proceedings; and (iv) expense and complexity of further litigation. *In re Pinterest Derivative Litig.*, 2022 WL 484961, at *3 (N.D. Cal. Feb. 16, 2022) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). Furthermore, "[t]o determine whether a proposed settlement is within the range of possible approval," the "court also must satisfy itself that the settlement is not the product of collusion among the negotiating parties." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2015 WL 1153864, at *3,*4 (N.D. Cal. Mar. 13, 2015); *citing In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000).

**B.    The Settlement Satisfies the Standards for Preliminary Approval**

The Court should preliminarily approve the Settlement because it provides substantial benefits to Mullen and its shareholders, was negotiated at arm's-length through the Mediator and informed by substantial investigation, and appropriately

10

balances the risks of litigation against the benefits of Settlement. Accordingly, the Settlement falls within the range of possible approval.

### 1. The Settlement Confers Substantial Benefits Upon Mullen and its Shareholders

As detailed above, the primary consideration for the Court when evaluating a settlement is the benefit conferred on the Company. *Ceradyne*, 2009 WL 10671494, at *2. It is well-understood that "a corporation may receive a 'substantial benefit' from a derivative suit [...] regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395, (1970). Accordingly, "[c]ourts have recognized that corporate governance reforms . . . provide valuable benefits to public companies." *Moore v. Verb Tech. Co., Inc.*, 2021 WL 11732976, at *4 (C.D. Cal. Mar. 1, 2021) (citing *NVIDIA,* 2008 WL 5382544, at *3). Furthermore, it has been long recognized that strong corporate governance reforms, such as those achieved here, also provide value to a company through increased "market value" and investors who "likely will view such reforms as an additional reason to purchase the stock." *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *10 (N.D. Cal. Nov. 5, 2008).

Here, Plaintiffs and Mullen agree that the Settlement "confer[s] substantial benefits on Mullen and its current shareholders." Stip., §IV. Indeed, the Corporate Governance Enhancements achieved here go to the heart of the alleged wrongdoing and seek to prevent any future occurrence of the misconduct alleged in the Action. As detailed above, the Corporate Governance Enhancements are designed to: improve Mullen's risk management functions through the creation of a Board-level Risk Committee; ensure Mullen's public disclosures are full and accurate through a new Management-Level Disclosure Committee; ensure the integrity of Mullen's internal controls through the Audit Committee's internal assessment; improve and expand the responsibilities of the Nominating and Corporate Governance Committee and the Compensation Committee; improve the independence and effectiveness of Mullen's

11

corporate governance and Board oversight through regular executive reports to the Board; improve director education; assure director's attention to their position on Mullen's Board by limiting the number of public company boards they may sit on; and ensuring the integrity of Mullen's management and legal and regulatory compliance through a formalized Whistleblower Policy. Stip., §V.3. With these Corporate Governance Enhancements, the Settlement not only seeks to prevent future harm, but will also strengthen Mullen's overall corporate governance and internal controls to provide real, substantial, and long-lasting benefits for Mullen and its shareholders. *See In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("The Settlement provides long term remedial measures that are specifically designed to protect the shareholders."). Thus, the Settlement is fair, reasonable, and adequate as Mullen's Board recognized. Stip., §IV; ¶V.2.2.

### 2. Strength of Plaintiffs' Case and the Costs and Risks of Further Litigation

When evaluating a settlement, courts in this Circuit consider "'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation.'" *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 2019 U.S. Dist. LEXIS 240004, at *19-20 (N.D. Cal. May 14, 2019) (quoting *Hanlon*, 150 F.3d at 1026). While Plaintiffs and their counsel believe the claims alleged in the Action are meritorious, they recognize the significant risk that continued litigation may not lead to any recovery for Mullen. *See e.g., Basaraba*, 2014 WL 12591677, at *3 ("In the context of shareholder derivative litigation, even the strongest cases have a very low likelihood of success due to the myriad legal, procedural, and discovery protections afforded director and officer defendants."); *Pinterest*, 2022 WL 484961, at *6 (listing obstacles to liability in shareholder derivative litigation). Thus, the uncertainties of further litigation demonstrate that the proposed Settlement is within the range of approval and warrants Court approval.

From the outset, Plaintiffs are mindful of the inherent challenges of establishing

12

1   demand futility, specifically overcoming Rule 23.1's heightened pleading standards.

2   *See e.g., OSI Sys.,* 2017 WL 5642304, at *3 (recognizing that adequately alleging

3   demand futility is a "difficult showing" that requires a plaintiff "to overcome several

4   hurdles to show that a majority of the board was either interested or lacked

5   independence"); *In re Fab Universal*, 148 F. Supp. 3d 277, 281-82 (S.D.N.Y. Nov. 17,

6   2015) ("The doctrine of demand futility … make[s] shareholder derivative suits an

7   infamously uphill battle for plaintiffs."); *Kamen v. Kemper Fin. Servs. Inc*., 500 U.S.

8   90, 96 (1991) (establishing demand futility requires "extraordinary conditions").

9          Assuming Plaintiffs could satisfy Rule 23.1, they would still face challenges

10  from Defendants as to whether they adequately stated claims under Rule 12(b)(6).

11  Even if Plaintiffs succeeded at the pleading stage, they still faced considerable hurdles

12  and liability was not a foregone conclusion. *In re Omnivision Techs., Inc.*, 559 F. Supp.

13  2d 1036, 1041 (N.D. Cal. 2008) ("Although Plaintiff's case has survived two motions

14  to dismiss … it still faces numerous hurdles."). Continued litigation would be

15  unpredictable, complex, and lengthy. Document discovery would need to be

16  completed, depositions would need to be taken, experts would need to be designated,

17  and expert discovery conducted. Moreover, it is anticipated that the Settling Defendants

18  would have fiercely defended the cases through motions for summary judgment and

19  trial. Plaintiffs would have faced the high costs associated with lengthy and complex

20  litigation, including voluminous discovery and depositions. Delaware's strong business

21  judgment presumption would afford Defendants powerful defenses that would be very

22  difficult to overcome. *See*, *e.g.*, *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693,

23  746–47 (Del. Ch. 2005), *aff'd,* 906 A.2d 27 (Del. 2006) and the exculpation and

24  indemnification rights granted to directors, absent a demonstration of intentional

25  misconduct and disloyalty. *See* 8 *Del. C.* §102(b)(7) (corporations may exculpate

26  directors from personal liability for damages except where they fail to act in good

27  faith). Indeed, for these reasons, "derivative lawsuits are rarely successful." *In re Pac.*

28  *Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (in affirming approval of a

settlement, the Ninth Circuit noted "the odds of winning the derivative lawsuit were extremely small.").

Even if Plaintiffs were able to persuade a jury on liability, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *See In re Lloyd's Am. Tr. Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages … is a complicated and uncertain process, typically involving conflicting expert opinions," making the outcome "highly unpredictable."); *NVIDIA*, 2008 WL 5382544, at *3 ("the amount of recoverable damages is uncertain."); *AOL*, 2006 WL 2572114, at *5 (the difficulty of "proving highly contested damages" supports derivative settlement approval).

Even a favorable judgment at trial is not a guaranteed outcome as a judgment could be reversed in post-trial motions or appeal. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, 2010 WL 5927988 (9th Cir. June 23, 2010) (evidence insufficient to support jury verdict for shareholders of $277 million); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).

The Settlement eliminates these and other risks, while ensuring that Mullen and its stockholders obtain immediate, long-lasting, and substantial benefits through the Corporate Governance Enhancements. While the Action was still early in its procedural stages and the Settlement was reached before formal discovery commenced, the Company produced non-public documents in the course of the Action. Egleston Decl., ¶22. The Settling Parties also exchanged additional information in connection with the mediation and settlement negotiations, and Plaintiffs undertook their own pre-suit factual investigations. *Id.,* ¶¶6, 17-18. As such, Plaintiffs have a strong grasp of the underlying facts and alleged misconduct to support their opinion that the Settlement is fair, reasonable, and adequate. *Sheikh v. Tesla, Inc.*, 2018 WL 5794532, at *5 (N.D.

14

Cal. Nov. 2, 2018) (court satisfied that parties were informed before reaching settlement despite "[l]ittle formal discovery had been completed at the time of settlement."); *Carter v. San Pasqual Fiduciary Tr. Co.*, 2018 WL 6174767, at *5 (C.D. Cal. Feb. 28, 2018) (finding that "mediation suggests that the parties know their relative strengths and weaknesses"); *Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2024 WL 477221, at *4 (E.D. Cal. Feb. 7, 2024) ("Given that the settlement reached was the product of arms-length bargaining following extensive informal discovery and with the help of an experienced mediator, this factor weighs in favor of final approval.").

Additionally, the Settlement frees Company resources and time that would otherwise be spent on litigating the Action to strengthen the Company's internal controls and operations. *See AOL*, 2006 WL 2572114, at *5 ("Termination of the litigation at this stage of the proceedings 'obviat[es] the expenditure of any future time and expense in connection with this action,' and will allow the Company to direct its full attention to its substantive business."). Accordingly, resolution of Plaintiffs' claims is beneficial at this stage.

Weighed against the risks and expense of further litigation, the substantial benefits conferred upon Mullen and its stockholders by the Settlement demonstrate that the recovery here is fair, reasonable, and adequate. Thus, the Settlement should be preliminarily approved.

### 3.    The Proposed Settlement is a Product of Informed, Arm's Length Negotiations

A "strong presumption of fairness" attaches to a settlement that is the product of arm's-length negotiations between experienced and well-informed counsel. *Van Der Gracht Rommerswael v. Auerbach*, 2018 U.S. Dist. LEXIS 224500, at *9 (C.D. Cal. Nov. 5, 2019); *Moore*, 2021 WL 11732976, at *6 (settlement is supported by "the fact [counsel] are experienced litigators in this field, have worked on this case at length, and have an understanding of its risks, also cuts in favor of finding the settlement procedurally robust and the product of arms length negotiations.");

15

*Villanueva v. Morpho Detection, Inc*, 2015 WL 4760464, at \*6 (N.D. Cal. Aug. 12, 2015) (A settlement enjoys a presumption of fairness if it "is recommended by … counsel after arm's-length bargaining."). Courts in the Ninth Circuit routinely hold that significant weight should be given to the parties' belief that a litigation should be settled on the agreed-upon terms, since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enters.*, 47 F.3d at 378; *see also In re First Cap. Holdings Corp. Fin. Prod. Sec. Litig.*, 1992 WL 226321, at \*2 (C.D. Cal. June 10, 1992) (finding the belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Clark v. Ecolab Inc.*, 2010 WL 1948198, at \*4 (S.D.N.Y. May 11, 2010) ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.") (alteration in original).

Here, the Settlement was reached after extensive arm's-length negotiations between experienced derivative litigation practitioners overseen by Mr. Meyer. The involvement of an experienced mediator bolsters the Settlement's fairness. *Roberti v. OSI Sys, Inc.*, 2015 WL 8329916, at \*3 (C.D. Cal. Dec. 8, 2015) ("[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4027632, at \*2 (S.D. Cal. Oct. 14, 2010) (prolonged "negotiations for several months . . . and the active involvement of the [respected] mediator . . . . weighs considerably in favor of concluding this is not a collusive settlement"). Courts routinely recognize Mr. Meyer's experience serving as a mediator in complex actions, finding his involvement supports a settlement's approval. *See e.g., Amans v. Tesla, Inc.*, 2024 U.S. Dist. LEXIS 41222, at \*11 (N.D. Cal. Mar. 8, 2024) (finding negotiations to be at arm's-length "with both Parties represented by experienced counsel, and with the assistance of a neutral third-party mediator, JAMS mediator Robert A. Meyer."); *Pennsylvania Transportation*

16

*Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at *10 (M.D. Pa. Feb. 1, 2023) (Mr. Meyer's involvement as a mediator and a settlement as a result of his proposal "demonstrates that the settlement reached between the parties resulted from an extensive good faith, arm's length negotiation."). Indeed, Mr. Meyer has been named by *Chambers and Partners* as a Band 1 mediator for six years. Egleston Decl., ¶4.

Counsel on both sides possessed a firm understanding of the strengths and weaknesses of the claims and defenses in the Action and are experienced shareholder derivative practitioners. *Id.*, ¶21, Exhibits 2-3 (firm resumes) thereto. Specifically, prior to the Settlement, Plaintiffs' Counsel was well-informed about the legal and factual issues the litigation posed as they conducted extensive research and investigation into the claims and underlying issues in their investigation. Plaintiffs' Counsel's efforts included: (i) reviewing and analyzing Mullen's public statements including SEC filings, press releases, transcripts of investor calls, and news articles; (ii) reviewing and analyzing the publicly available filings against Mullen in the Securities Class Action; (iii) researching, drafting, and filing the *Witt* Action and *Morsy* Action; (iv) reviewing internal documents Mullen produced to Plaintiffs in connection with the litigation; (v) researching the applicable law with respect to the claims asserted, or that could be asserted, and the potential defenses thereto; (vi) researching corporate governance issues; (vii) preparing a settlement demand; (viii) participating in an in-person mediation session; (ix) engaging in extensive post-mediation settlement discussions with Defense Counsel overseen by the Mediator, including the exchange of corporate governance reform proposals and counteroffers; and (x) negotiating and drafting the term sheet and subsequent settlement documentation for presentment to the Court.[6] Stip., §II; Egleston Decl., ¶6.

Only after reaching an agreement in principle on the Settlement's substantive

---

[6] Plaintiffs' Counsel also responded to specially appearing defendant Firer's Motion to Dismiss (ECF Nos. 20, 25, 28). This motion was taken under submission prior to the entry of the Stipulation.

terms by signing the term sheet and the Corporate Governance Enhancements did the Parties discuss attorneys' fees. Egleston Decl., ¶20. Over several weeks, through Mr. Meyer, the Parties engaged in further arm's-length negotiations as to attorneys' fees. Ultimately, Mr. Meyer issued a mediator's proposal of a Fee and Expense Amount of $500,000, which all parties accepted. *Id.*; Stip., ¶V.6.1.

The Parties and their respective counsel have determined on an informed basis that the proposed Settlement represents a fair, reasonable, beneficial, and practical resolution of highly uncertain litigation, and that its terms fairly account for the risks and potential rewards of the claims being settled. Significantly, Mullen's Board has determined, in a good faith exercise of their business judgment, that "the Settlement and each of its terms are fair, reasonable, and in the best interest of Mullen and its current shareholders." Stip., ¶V.2.2. Courts traditionally afford substantial deference to directors' exercise of independent business judgment. *See generally Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981); *see also Brooks v. Am. Exp. Indus., Inc*., 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) ("The Court is of the view that in this case, the decision of the [] board to approve this settlement is appropriately afforded certain deference; it is a business judgment with presumptive validity."). Additionally, the Company: (i) "acknowledges that the Corporate Governance Enhancements … confer substantial benefits on Mullen and its current shareholders" (Stip., §IV); (ii) recognizes that Plaintiffs' efforts of  "the filing, pendency, and settlement of the Consolidated Derivative Action caused the adoption and implementation of the Corporate Governance Enhancements," (*Id*., ¶V.2.2), and (iii) determined "that it is desirable and beneficial that the Consolidated Derivative Action, and all of the Settling Parties' disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation." *Id*., §III.

As the terms of the Settlement, including the Fee and Expense Amount, were negotiated under the guidance of an experience mediator these facts demonstrate that

the settlement negotiations were conducted at arm's length, in good faith, and free of collusion. Thus, the proposed Settlement is presumed fair, adequate, and reasonable and warrants preliminary approval. *See Griffin v. Consol. Commc'ns*, 2023 U.S. Dist. LEXIS 98743, at *8-9 (E.D. Cal. Jun. 5, 2023) ("Given counsel's representation that the settlement reached was the product of arms-length bargaining following extensive informal discovery and with the help of an experienced mediator, this factor weighs in favor of final approval.").

## VI.    NOTICE SATISFIES RULE 23.1(c) AND DUE PROCESS

Notice of a proposed shareholder derivative settlement must be given to shareholders "in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Notice to shareholders "must be 'reasonably calculated under all the circumstances to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lloyd v. Gupta*, 2016 U.S. Dist. 96166, at *19-20 (N.D. Cal. Jul. 22, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Attached as Exhibits B and C, respectively, to the Stipulation are the agreed-to Notice of Proposed Derivative Settlement ("Long-Form Notice") and the Summary Notice of Proposed Derivative Settlement ("Summary Notice" collectively, "Notice"). The proposed Notice describes in plain language the terms and conditions of the proposed Settlement, including the: (i) facts and considerations that caused the Parties and their respective counsel to conclude that the proposed Settlement is fair, reasonable, adequate, and in Mullen's best interests; (ii) procedure for objecting to the proposed Settlement; and (iii) date, place, and time of the Settlement Hearing. Stip., Ex. B, C. The proposed Notice is reasonably calculated to apprise Mullen shareholders of Settlement and afford them an opportunity to present their objections, if any.

To provide Notice, the Parties have agreed that "[w]ithin twenty-one (21) days after entry of the Preliminary Approval Order, Mullen shall: (1) post a copy of the Long-Form Notice on the Investor Relations page of Mullen's website; (2) publish the

19

Short-Form Notice in *Investor's Business Daily*; and (3) publish the Short-Form Notice on an electronic newswire such as *PRNewswire* or *GlobeNewswire*. Mullen shall also update the litigation disclosure in its first quarterly filing with the SEC on Form 10-Q after the Preliminary Approval Order to state that the Long-Form Notice can be found on the Investor Relations page of Mullen's website." Stip., ¶V.4.2.[7]

Courts have routinely approved similar methods of providing notice of a settlement of a derivative action. *See e.g.*, *In re Banc of California, Inc. Stockholder Derivative Litigation*, Case No. 8:19-cv-00621-DMG-DFM (C.D. Cal.) (ECF No. 121 at ¶5) (Exhibit 1 to Egleston Decl. )(notice comprised of Form 8-K or other appropriate filing, publication once in *Investor's Business Daily,* and posting of SEC filing to company's website); *MRV Commc'ns.*, 2013 WL 2897874, at *1 (notice comprised of an attachment to a Form 8-K, publication on company website, and publication once in *Investor's Business Daily*); *Arace v. Thompson*, 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) (approving notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website); *Rambus,* 2009 WL 166689, at *2 (notice comprised of press release issued on *BusinessWire,* filed on a Form 8-K, and published on company's website); *In re PMC-Sierra, Inc. Deriv. Litig.*, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (notice comprised of SEC filing, posting on company's website, and single publication in *Investor's Business Daily*); *Allred v. Walker*, U.S. Dist. LEXIS 236249, at *8 (S.D.N.Y. Dec. 9, 2021) (notice comprised of publication on *GlobeNewswire*, Form 8-K filing, and posting on the company's website).

Accordingly, the proposed form and plan of Notice warrant Court approval because they constitute the best notice practicable under the circumstances and satisfy the requirements of Rule 23.1(c), due process, and any other applicable law.

---

[7] If preliminary approval is granted, Plaintiffs' Counsel will also post the motion in support of final approval and the Fee and Expense Application on their respective websites. Stip., ¶V.4.4.

## VII. **PROPOSED SCHEDULE OF EVENTS**

Plaintiffs request the Court establish the dates by which: (i) Notice will be disseminated to Mullen shareholders; (ii) Mullen's shareholders may object to the Settlement; and (iii) the final Settlement Hearing shall occur. Plaintiffs propose the following schedule:

| EVENT | DEADLINE |
|---|---|
| Deadline for Mullen to: (1) post Long-Form Notice on the Investor Relations page of Mullen's website; (2) publish the Short-Form Notice in *Investor's Business Daily*; and (3) publish the Short-Form Notice on as *PRNewswire* or *GlobeNewswire*.[8] | Within 21 days following the entry of the Preliminary Approval Order. |
| Deadline for Mullen to file proof that it complied with disseminating Notice. | At least 14 days before the Settlement Hearing. |
| Deadline to file motion in support of final approval of the Settlement. | No later than 45 days prior to the Settlement Hearing. |
| Deadline for Plaintiffs' Counsel to post motion in support of final approval of the Settlement and Plaintiffs' Counsel's Fee and Expense Application on Plaintiffs' Counsel's websites. | At least 21 days prior to the Settlement Hearing. |
| Deadline for current Mullen shareholders to object to the Settlement. | No later than 21 days prior to the Settlement Hearing. |
| Plaintiffs may file a reply brief in further support of final approval of the Settlement and the Fee and Expense Application. | No later than 10 days prior to the Settlement Hearing. |

---

[8] Mullen will also update the litigation disclosure in the next Form 10-Q. Stip., ¶V.4.2.

21

| EVENT | DEADLINE |
|---|---|
| Deadline for the Parties to file a joint response brief (or separate response briefs) to any objections made in connection with the proposed Settlement. | At least 5 days prior to the Settlement Hearing. |
| Settlement Hearing. | At least 60 days after entry of the Preliminary Approval Order. |

This proposed schedule is similar to those used in numerous derivative settlements, affording sufficient due process to Mullen's shareholders concerning their rights with respect to the Settlement. *See e.g., Hewlett-Packard,* 2015 WL 1153864, at *6; *In re MRV Commc'ns, Inc. Derivative Litig.,* 2013 WL 12210256, at *5 (C.D. Cal. Apr. 8, 2013).

## VIII.  <u>CONCLUSION</u>

Given the substantial benefits the Settlement provides to Mullen and its shareholders, Plaintiffs respectfully request that the Court enter the Parties' proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation and submitted concurrently herewith: (i) granting preliminary approval of the Settlement; (ii) approving the form and manner of the Notice; and (iii) scheduling a date for the Settlement Hearing.


Dated: September 9, 2024                Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A**.


                                        */s/ Erica L. Stone*
                                        Laurence M. Rosen (SBN 219683)
                                        355 South Grand Avenue, Suite 2450
                                        Los Angeles, CA 90071
                                        Telephone: (213) 785-2610
                                        Facsimile: (213) 226-4684
                                        Email: lrosen@rosenlegal.com


22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Erica L. Stone (*pro hac vice*)
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: estone@rosenlegal.com
Email: philkim@rosenlegal.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston (*pro hac vice*
forthcoming)
260 Madison Avenue, 22nd Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Co-Lead Counsel for Plaintiffs*

**MAGNANIMO DEAN LAW, APC**
Lauren A. Dean, Bar No. 174722
5850 Canoga Avenue, Suite 400
Woodland Hills, CA 91367
Telephone: (818) 305-3450
Facsimile: (818) 305-3451
Email: Lauren@MagDeanLaw.com

*Counsel for Plaintiffs Jeff Witt
and Joseph Birbiglia*

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE WITH LR 11-6.2</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,929 words, which complies with the word limit of L.R. 11-6.1.

Date: September 9, 2024

*/s/ Erica L. Stone*
Erica L. Stone

24

# CERTIFICATE OF SERVICE

I, Erica L. Stone, hereby declare under penalty of perjury as follows:

I am an attorney at The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On September 9, 2024, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on September 9, 2024.


*/s/ Erica L. Stone*
Erica L. Stone